## STATE v. FRED ADAMS.

(Filed 30 November, 1938.)

**1. Rape § 5—**

The offense defined by Michie's Code, 4205, is an assault on a female with intent to commit rape, the "intent" to commit this offense being inclusive of an "attempt" to commit it.

**2. Rape § 7: Criminal Law § 81c—Admission of evidence will not be held for error when evidence of same import is admitted without objection.**

In this prosecution for assault with intent to commit rape, defendant objected to the testimony of a witness that she heard prosecutrix tell the doctor that she had been "attacked and tried to be raped" by the defendant. *Held:* The admission of the evidence cannot be held prejudicial in view of the admission of evidence of the same import without objection and the plenary evidence that defendant attacked prosecutrix.

**3. Rape § 9: Criminal Law § 81c—Inadvertent error in instructions which could not mislead the jury will not be held prejudicial error.**

In this prosecution for assault with intent to commit rape, an inadvertent instruction that ordinarily the question of intent must not be left to the jury to determine from the facts and circumstances, *is held* not prejudicial in view of the correct instruction immediately following, and the fact that the court submitted the question of intent to the jury under correct instructions.

**4. Criminal Law §§ 4b, 43h—**

The instruction on the question of intoxication as a defense in precluding the formation of criminal intent comprising an essential element of the crime charged, *held* without error when construed as a whole.

APPEAL by defendant from *Armstrong, J.,* and a jury, at January Term, 1938, of GASTON. No error.

This is a criminal action instituted in the Superior Court of Gaston County, North Carolina, in which the defendant is charged with an assault with intent to commit rape.

The bill of indictment is as follows:

"State of North Carolina—Gaston County.

In the Superior Court, January Term, 1938.

"The jurors for the State upon their oath present, that: Fred Adams, late of the County of Gaston, on 2 December, 1937, with force and arms, at and in the county aforesaid, did unlawfully, wilfully, and feloniously commit an assault upon a female, to wit, one Evelyn Price, with intent to rape, ravish, and carnally know the said Evelyn Price forcibly and against her will, against the form of the statute and in such case made and provided, and against the peace and dignity of the State.

JOHN G. CARPENTER, *Solicitor.*"

The testimony for the State: The prosecutrix, Evelyn Price, testified, in part: That on 2 December she was at home; that the defendant came there late in the afternoon and asked for her brother, and she told him her brother was not at home; that the defendant said he had an engagement to meet her brother there; that he pulled up a chair and sat down; that he attempted to put his arm around her; that she jumped up and told him she was not the hugging kind; that he inquired if she did a little kissing; that a scuffle ensued in the living room and the bedroom; that he threw her down on the floor; that he put his fist in her mouth, and his coat over her, and that he struck her, and beat her, and bit her, and in addition tore some of her undergarments practically off; that the scuffle lasted some 20 or 25 minutes; she testified that she screamed and hollered for some of the neighbors; that she finally got loose and called some of the neighbors; that the defendant ran through the back of the house through a screen door that was locked. She testified that she told her mother and Mr. Williams and Mr. Gunter about what happened. That the defendant was drinking.

Mrs. Price testified: That she is the mother of Evelyn Price; that she had stepped out to the store; that Evelyn's ear was bleeding; that she had a black eye, and her neck and shoulders were swollen, and that the bedroom and living room were torn up.

Tom Ingle testified: That he was going home and he heard Miss Evelyn Price hollo for her mother. That she told him what had happened, and that Miss Evelyn's ear and nose were bleeding and her knees were bruised.

Pete Nivens testified: That he was coming down the street and he heard Miss Price scream; that he went to the door; that she told him what the defendant had done; that he noticed the screen door was broken.

Mr. Williams testified: That he saw Miss Price; that her ear was bleeding, and her neck was swollen, and that Miss Price told him the defendant assaulted her.

Helen Gordon testified: That she saw the defendant run from the back of some of the houses facing on Marietta Street and come out on Fifth Street; that she saw Miss Price, and her ear was bleeding.

Dr. McChesney testified: That he examined Miss Price on 2 December about 7:00 p.m., and found her in a very nervous state and crying; bruised on her knee, and redness of neck and face; and her face was swollen and she had a cut on her right ear.

Mrs. T. E. Royster testified: That she went to the house and found Miss Price crying; that she had a bruise on her knee; that the front room was torn up. Question: "State what you heard Miss Price say?" (Objection; objection overruled.) Ans.: "Miss Price told the doctor she had been attacked and tried to be raped by the defendant."

Albert Nims testified: That he went to the house and saw Miss Price, and that her ear was bleeding.

D. C. Gunter testified: That he lived near the Price residence; that he heard some screaming or some sort of fuss at the Prices; that he supposed it was Miss Price and her brother; that he got his pistol and went to the home of Miss Price, and found her mouth and nose bleeding; that she told him that the defendant had attacked her; that the character of the defendant Fred Adams is good, and that the character of Miss Price is good.

The defendant testified, in part, as follows: That he lived on Sixth Avenue; that he was a married man; that he knew Miss Price; that he did not go to her house on 2 December and attack her; that he was with Joe Price and Joe Long; that he got with them at 3:30 and they drank a pint of white liquor; that they went to Belmont and back to Gastonia; that he went to Snyder's Cafe and drank some beer, and the next thing he knew, he woke up in jail about 11:00 o'clock that night.

The defendant was corroborated by several witnesses. One testified that on 2 December, about 7:30 p.m., he was "limber drunk," and another that he was "limber drunk" and that the only thing he would say when he was taken "would be to grunt."

There was evidence on the part of the State that defendant "was not drunk." There was evidence that the prosecuting witness and defendant's general reputation was good. The jury "came in and returned a verdict of guilty of an assault on a female with attempt to commit rape, as charged in the bill of indictment." The court below pronounced judgment on the defendant as follows: "Judgment of the court is that the defendant be confined in State's Prison at Raleigh, at hard labor and to wear stripes, for a term of not less than one year nor more than three years."

The defendant made numerous exceptions and assignments of error and appealed to the Supreme Court. The material ones will be set forth in the opinion.

*Attorney-General McMullan and Assistant Attorneys-General Bruton and Wettach for the State.*

*Ernest R. Warren for defendant.*

CLARKSON, J. N. C. Code, 1935 (Michie), section 4205, is as follows: "Every person convicted of an assault with intent to commit rape upon the body of any female shall be imprisoned in the State's Prison not less than one nor more than fifteen years."

In *S. v. Hewett,* 158 N. C., 627 (629), we find: "Thus we see that practically all definitions of an attempt to commit a crime, when applied

to the particular crime of rape, necessarily imply and include 'an intent' to commit it. There may be offenses when in their application to them there is a distinction between 'attempt' and 'intent,' but that cannot be true as applied to the crime of rape. There is no such criminal offense as an 'attempt to commit rape.' It is embraced and covered by the offense of 'an assault with intent to commit rape,' and punished as such."

Mrs. T. E. Royster testified: "That she went to the house and found Miss Price crying; that she had a bruise on her knee; that the front room was torn up. Q. 'State what you heard Miss Price say?' Ans.: 'Miss Price told the doctor she had been attacked and tried to be raped by the defendant.'" To the above question and answer the defendant excepted and assigned error. From the other evidence in the case we do not think it prejudicial. Mr. Gunter testified "that he went to the home of the prosecutrix and 'found her mouth and nose bleeding;' that she told him that the defendant had attacked her." This testimony was admitted without objection.

The defendant excepted and assigned error to the following part of the charge in brackets: "[So, gentlemen of the jury, whether the ulterior criminal intent existed in the mind of the defendant in this case at the time of the alleged criminal act must of necessity be inferred and found from other facts which in their nature are the subject of specific proofs. It must not, ordinarily, be left to the jury to determine from the facts and circumstances whether or not the ulterior criminal intent existed at the time of the act, if you find the act was committed.] In some cases, gentlemen of the jury, the inference will be irresistible, while in other matters you may have great difficulty in determining whether or not the accused committed the act charged with in the record, which is the criminal purpose. So that means, in this case, gentlemen of the jury, the charge contained in the bill of indictment, the State must satisfy you beyond a reasonable doubt not only that the defendant committed an assault on Miss Evelyn Price, as the court has defined the term assault, but the State must go further and show you beyond a reasonable doubt that the defendant had the intent to carnally know or to have sexual intercourse with her forcibly and against her will, regardless of any resistance she might make. If the State fails to so satisfy you, you will return a verdict of *not guilty* as contained in the first charge—assault with intent to commit rape. It is proper and you may consider all the facts and circumstances in this case to determine whether or not that intent did exist—that is, we won't say, we can't say, that the defendant had that intent but must procure evidence and let the jury consider it and see what happened and let you take into considera-

tion all the facts and circumstances surrounding the case, and say whether or not there was criminal intent or intent to commit rape."

The portion of the charge objected to in connection with the whole charge could not have misled the jury. It could not be held as prejudicial. At most, it was an inadvertence followed by a charge unquestionably correct.

The defendant excepted and assigned error to the following part of the charge in brackets: "If the defendant in this case was under the influence of intoxicating liquor to such an extent that his normal functions of body and mind were so interferred with—that is, if he was in such condition that he could not form an intent to commit rape—that is, if he did not know what he was doing and what he was about and what he was trying to do; if he was so affected by the liquor that he could not form an intent, then he could not be guilty of the charge as contained in the bill of indictment. Now, it wouldn't make any difference, gentlemen of the jury, if a man gets two or three drinks of liquor or gets 'tight' or 'high' or gets nerve to commit an assault that wouldn't be any excuse for committing this or any other crime; but you have got to be in such condition, you don't have any mind; you don't have sufficient mind to form an intent, [so I want you to clearly understand that because a man gets under the influence of whiskey and commits a crime, either such crime as charged in the bill of indictment or any other crime, it wouldn't be an excuse]." Taking the charge as a whole, we think it the law in this jurisdiction.

We do not think the court below invaded the province of the jury by expression of an opinion, but fully complied with N. C. Code, *supra,* sec. 564. We think on the record that defendant's exceptions and assignments of error cannot be sustained—they are too attenuated.

On the whole record, we find no prejudicial or reversible error.

No error.