STATE OF NORTH CAROLINA v. LAWRENCE ROBERT LITTLE

No. 54

(Filed 26 November 1974)

1. Criminal Law § 162 — assignment of error to evidence — necessity of going beyond assignment

Defendant's assignment of error to the trial court's admission of certain testimony failed to comply with Rules of Practice of the Supreme Court where it failed to show specifically what question was intended to be presented for consideration without the necessity of going beyond the assignment of error itself.

2. Property § 4 — damage of occupied property by use of explosive — competency of evidence

In a prosecution for damaging occupied real property by the use of an explosive or incendiary device, the trial court properly admitted testimony concerning conversations defendant had with various witnesses indicating his hatred for blacks and for the owner of a black newspaper, the office of which was located in the building that was damaged by the explosion, and indicating that defendant had the dynamite that he planned to use and did in fact use in dynamiting the building, since such testimony was competent to show the requisite intent or state of mind and the motive for the commission of the crime, as well as the commission of the crime itself.

3. Criminal Law § 169 — exclusion of witness's answer — failure to show what answer would have been — exclusion not prejudicial

Defendant failed to show prejudice in the trial court's refusal to let an officer testify regarding whether Ben Chavis was in the area on the day of the explosion where the record does not show the answer the witness would have given had he been permitted to answer.

4. Criminal Law § 163 — assignment of error to charge — failure to set out objectionable portion

Defendant's assignment of error that "The lower court erred in its definition of malice in its charge" was insufficient since it did not quote the portion of the charge to which defendant objected or set out defendant's contention as to what the court should have charged.

5. Property § 4 — malicious damage to occupied property by use of explosive — sufficiency of definition of malicious

In a prosecution for wilfully and maliciously damaging occupied real property by the use of an explosive or incendiary device, the trial court's instruction defining "the term malicious to mean with animosity, hatred or ill will" was sufficient.

Chief Justice BOBBITT not sitting.

APPEAL by defendant under G.S. 7A-27(a) from *Tillery, J.*, at the 25 February 1974 Criminal Session of NEW HANOVER Superior Court.

Defendant was convicted of wilfully and maliciously damaging occupied real property by the use of an explosive or incendiary device, a violation of G.S. 14-49.1, and was sentenced to life imprisonment.

About 10:55 p.m. on 28 May 1973 there was an explosion at the two-story, wood-frame building at 412½ South Seventh Street, Wilmington. The first floor of this building was used as office space for the *Wilmington Journal*, a weekly newspaper owned by T. C. Jervay. The six-room apartment on the second floor was occupied by Mr. and Mrs. Richard L. Warren. Damage to the first floor and surrounding buildings was extensive.

Richard L. Warren and T. C. Jervay testified concerning the extent of the damage to the building and its environs.

Michael Burress, a United States Marine who was stationed in Jacksonville, North Carolina, at the time of the offense, testified that he had accepted rides from defendant on 27 April and 6 May 1973; that on 27 April defendant was wearing a black jacket, a green beret, and across his chest a bandolier cartridge belt full of shotgun shells; that on 6 May 1973, defendant took him to a bookstore that had recently been bombed and asked him how the explosives might have been placed so that more damage would have been done to the building; that defendant became "very perturbed" and pulled over to the side of the road after passing a black man walking with a white woman; that defendant wanted to "beat the black man up"; that he helped defendant deposit some heavy green bags in a hole behind a trailer belonging to a friend of defendant; that defendant told him all blacks were animals trying to impersonate humans; that defendant told him he was a member of an organization, Rights of White People (ROWP), whose purpose was to exterminate all blacks and Jews; and that defendant had a .16-gauge shotgun in the back of his vehicle.

David Harvey Smith next testified for the State. His testimony tends to show that he met defendant in February of 1973 and was with him from time to time after that; that defendant came to his trailer on 6 May 1973 with Michael Burress and deposited some bags in a hole behind his trailer so defendant could "get the heat off" himself; that the bags contained dyna-

mite; that, on defendant's request, he took some of this dynamite to defendant on 28 May 1973 and that defendant said to him, "Justice will be done tonight." He further testified that on 2 June 1973 defendant told him he had used some of the dynamite to blow up the *Journal* office.

Michael Corbett, a cellmate of defendant in the New Hanover County jail from 20 July to 28 July 1973, testified that defendant told him "that he blew up the *Wilmington Journal* and that he used twenty-two pounds of dynamite and that he placed the dynamite in front of the door on the steps." Corbett also testified that defendant told him that he had a cache of dynamite on David Smith's property, and that he had a dynamite plunger, blasting caps, and whatever he needed to blow up something. He also stated that defendant told him that he did not like colored people.

Peggy Brown, who worked with defendant, testified that on 18 June defendant talked to her about his membership in the ROWP and that he defined this as an organization that worked in protest against black people, that he expressed an extreme hatred and a deep hatred for black people, and said that the black population was rapidly increasing and that something had to be done about it. He told her that he was Minister of Propaganda for the ROWP. He also told her that he bombed the *Wilmington Journal*. She said she asked him why, and he said he did it because it was a black newspaper and that he had left it in a mess.

Officers of the Wilmington Police Department and Federal and State law enforcement agencies testified in corroboration.

Defendant offered no evidence.

*Attorney General Robert Morgan by Assistant Attorney General Lester V. Chalmers, Jr., for the State.*

*John Richard Newton for defendant appellant.*

MOORE, Justice.

Defendant in his brief brings forward three assignments of error numbered first, sixth, and ninth. All assignments of error and exceptions not discussed in the brief are deemed to be abandoned. Rule 28, Rules of Practice in the Supreme Court, 254 N.C. 783 (G.S. 4A, Appendix I(1)); *State v. Crews*, 284

N.C. 427, 201 S.E. 2d 840 (1974) ; *State v. Kirby,* 276 N.C. 123, 171 S.E. 2d 416 (1970) ; *State v. Gordon,* 241 N.C. 356, 85 S.E. 2d 322 (1955).

**[1]** The first assignment of error is as follows:

> "1. The lower Court erred in admitting irrelevant testimony.

> EXCEPTIONS NOS. 1 (R p 10), 2 (R p 11), 3 (R pp 11, 12), 4 (R p 12), 5 (R p 13), 6 (R p 14), 7 (R p 15), 8 (R p 16), 9 (R p 17), 10 (R p 19), 13 (R p 22), 16 (R p 25), 17 (R p 26), 20 (R p 28), 21 (R p 29)."

This assignment of error fails to comply with the Rules of this Court in that it fails to show specifically what question is intended to be presented for consideration without the necessity of going beyond the assignment of error itself. Rules 19 (3) and 21, Rules of Practice in the Supreme Court, supra; *State v. Kirby, supra; In re Will of Adams,* 268 N.C. 565, 151 S.E. 2d 59 (1966).

As stated in *In re Will of Adams:*

> "Rules 19 and 21, Rules of Practice in the Supreme Court, 254 N.C. 783, 795, 803, require that asserted error must be based on an appropriate exception, and must be properly assigned. We have repeatedly said that these rules require an assignment of error to show specifically what question is intended to be presented for consideration without the necessity of going beyond the assignment of error itself. A mere reference in the assignment of error to the record page where the asserted error may be discovered is not sufficient. *Samuel v. Evans,* 264 N.C. 393, 141 S.E. 2d 627; *Darden v. Bone,* 254 N.C. 599, 119 S.E. 2d 634; *Hunt v. Davis,* 248 N.C. 69, 102 S.E. 2d 405; *Lowie & Co. v. Atkins,* 245 N.C. 98, 95 S.E. 2d 271; *Steelman v. Benfield,* 228 N.C. 651, 46 S.E. 2d 829. The rules of practice in this Court are mandatory and will be enforced. *Walter Corp. v. Gilliam,* 260 N.C. 211, 132 S.E. 2d 313; *Balint v. Grayson,* 256 N.C. 490, 124 S.E. 2d 364; *Pruitt v. Wood,* 199 N.C. 788, 156 S.E. 126. . . ."

**[2]** Defendant's first assignment of error is ineffectual to bring up for review by this Court any part of the trial judge's rulings as to the admission of evidence. Despite the failure of defendant to perfect his appeal in conformity with the Rules,

State v. Little

since a life sentence is involved we have elected to consider the testimony that he seeks to attack. The conversations defendant had with the various witnesses, the admission of which he alleges was error, indicated his hatred for blacks and for Jervay who owned the black newspaper, the office of which was located in the building that was damaged by the explosion. These conversations further indicate that defendant had the dynamite that he planned to use and did in fact use in dynamiting the building. Such testimony was competent to show the requisite intent or state of mind and the motive for the commission of the crime, as well as the commission of the crime itself.

"In criminal cases every circumstance that is calculated to throw light upon the supposed crime is relevant and admissible if competent. . . . It is always competent to show a motive for the commission of the crime though motive does not constitute an element of the offense charged. To this end, evidence or threats made by defendant, or ill will existing between him and the victim of the offense, is competent." 2 Strong, N. C. Index 2d, Criminal Law § 33 (1967). *State v. Hamilton,* 264 N.C. 277, 141 S.E. 2d 506, cert. den. 384 U.S. 1020, 16 L.Ed. 2d 1044, 86 S.Ct. 1936 (1965) ; *State v. McClain,* 240 N.C. 171, 81 S.E. 2d 364 (1954).

Defendant's first assignment of error is overruled.

[3] Defendant next assigns as error the trial court's refusal to let Officer Page testify regarding whether Ben Chavis was in the area on 28 May 1973. This assignment is without merit. Assuming, without deciding, that the question was competent, defendant has failed to show the answer the witness would have given had he been permitted to answer. In *State v. Robinson,* 280 N.C. 718, 187 S.E. 2d 20 (1972), this Court said: "The record does not show what the State's witnesses or defendant would have said had they been permitted to answer the questions. Therefore we cannot know whether the rulings were prejudicial. The burden is on appellant not only to show error but to show *prejudicial error.* [Citations omitted.]"

[4] Finally, defendant's ninth assignment of error is as follows: "The lower court erred in its definition of malice in its charge." Again, this assignment of error fails to meet the requirements of our Rules. "Assignments of error to the charge should quote the portion of the charge to which appellant objects, and assignments based on failure to charge should set

out appellant's. contention as to what the court should have charged." *State v. Kirby, supra. Accord, State v. Fowler,. 285* N.C. 90, 203 S.E. 2d 803 (1974) ; *State .v. Crews, supra.* The trial court instructed the jury that in order to convict the defendant they must be satisfied beyond. a reasonable doubt of the following:

> "First, that the defendant damaged the building on South Seventh Street which was owned by Mr. T. C. Jervay and used by him as an office for the Wilmington Journal.
>
> "Second, that the defendant did this with an explosive or incendiary device of some sort. And I charge you that among other things, dynamite is an explosive device within the meaning of the statute.
>
> "Third, that the defendant acted wilfully, that is intentionally and without justification or excuse.
>
> "Fourth, that the defendant acted maliciously, that is [with] animosity, hatred or ill will.
>
> "And fifth, that the real property was at that time occupied by some person, which in this instance if occupied would have been by Mr. Richard Warren and his wife.
>
> "It is necessary for me to define for you some of these terms I have used. I have already defined the term malicious to mean with animosity, hatred or ill will."

**[5]** Defendant contends that the trial court's definition of the word "maliciously" was insufficient. He contends that the charge must not only set out that the act was maliciously done but that the act was maliciously done with ill will, animosity, or a preconceived revenge toward the owner. In the present case, the court charged the jury that in order to convict it must find beyond a reasonable doubt that defendant damaged the building of Mr. Jervay with an explosive, that defendant acted wilfully and maliciously, and that the building was occupied at the time. In *State v. Conrad,* 275 N.C. 342, 168 S.E. 2d 39 (1969), the defendant was convicted of malicious damage to an occupied building, a violation of G.S. 14-49.1, the same statute that defendant is charged with violating in this case. In affirming Conrad's conviction, Justice Higgins speaking for the Court said: "The gist of the offense . . . is malicious injury or damage to property, real or personal, by the use of. high ex-

plosives. The word 'malicious' as used in the statute connotes a feeling of animosity, hatred or ill will toward the owner, the possessor, or the occupant."

In the present case, there was ample evidence of defendant's animosity, hatred, and ill will towards T. C. Jervay, the owner of the building, towards blacks generally, and towards the *Wilmington Journal,* a black newspaper, one of the occupants of the building. The trial court charged that the act of dynamiting the building must have been done maliciously and then defined maliciously exactly as set out in *State v. Conrad, supra.* This assignment is without merit.

A careful review of the record discloses that defendant had a fair and impartial trial free from prejudicial error.

. . · No error.

Chief Justice BOBBITT not sitting.