STATE OF NORTH CAROLINA v. DARNELL BANKS

No. 72

(Filed 14 July 1978)

**1. Kidnapping § 1— statute not vague or overbroad**

G.S. 14-39, the kidnapping statute, is not unconstitutionally vague or overbroad.

**2. Kidnapping § 1— purpose for kidnapping—separate, punishable offenses**

Since the charges of crime against nature, assault with intent to commit rape and robbery with a dangerous weapon were alleged in the bill of indictment charging kidnapping as the purposes for which defendant confined and restrained the victim, and the charges so alleged were not elements of the offense of kidnapping which the State had to prove, the crimes of crime against nature, assault with intent to commit rape and robbery with a dangerous weapon were separate and distinct offenses and were punishable as such.

**3. Jury § 6— voir dire—consultation with psychologist—no prejudice**

Defendant was not prejudiced by the trial court's ruling which permitted the prosecutor to consult with a psychologist during the voir dire examination

of the jury, since there was no evidence that would tend to show that the psychologist's presence during the jury voir dire precluded the selection of an impartial jury; defendant did not seek the aid of the psychologist; and defendant did not contend that the jury as finally impaneled was partial or biased.

**4. Criminal Law § 66— in-court identification of defendant—no timely objection**

The trial court did not err in admitting the in-court identification of defendant by the prosecuting witness since defendant failed to make a timely objection or a motion to strike; other than an ambiguous statement by the witness that she "identified the guy at the hospital," there was nothing in the record tending to show the existence of any pretrial identification procedures of a suggestive nature; the witness's in-court identification of defendant was positive and unequivocal; and the witness's description of her assailant prior to his arrest was detailed and accurate.

**5. Rape §§ 4.3, 18.1— assault with intent to commit rape—unchastity of prosecutrix—evidence improperly excluded—no prejudice**

When a defendant has been charged with rape or with assault with intent to commit rape, evidence of the prosecutrix's reputation for unchastity is admissible both to attack her credibility as a witness and to show the likelihood of consent, but testimony of specific acts of unchastity with someone other than defendant is incompetent; therefore, in a prosecution for assault with intent to commit rape, the trial court erred in not permitting the prosecuting witness to testify as to whether she had engaged in sexual relations since the birth of her illegitimate child, but defendant failed to show that the exclusion of such evidence was prejudicial where the record did not show what the witness's answer would have been.

**6. Criminal Law § 169— evidence improperly admitted—no prejudice**

In a prosecution for assault with intent to commit rape where a witness was asked when he first saw the victim, the trial court erred in failing to strike his response, "That was after she had been raped," since defendant was not charged with rape and there was no evidence that defendant raped the prosecuting witness; however, the jury was not misled by the witness's testimony and the trial court's error was therefore not prejudicial to defendant.

**7. Criminal Law §§ 50, 96— nurse's testimony—no expression of opinion—curative instruction given**

In a prosecution for kidnapping, robbery with a dangerous weapon, assault with intent to commit rape and crime against nature, defendant was not entitled to a mistrial where a nurse, who testified for the State concerning the medical treatment administered to the prosecutrix following the assault, expressed her opinion that the prosecutrix's complaints concerning chest pains were more related to an emotional upset than to physical injury and stated that she could "usually pick them out, ones fussing and fuming for no good reason," since the nurse did not thereby express an opinion as to the veracity of the prosecutrix, and any possible prejudice resulting from the remarks was removed by the court's prompt curative instruction.

State v. Banks

8. **Criminal Law § 60— palmprint—admissibility to show identity**

The trial court did not err in allowing a fingerprint expert to testify that a palmprint found at the scene of the assault was defendant's, since such evidence was admissible to corroborate the prosecuting witness's identification of defendant as the perpetrator of the charged crimes.

9. **Rape § 18.2— assault with intent to commit rape—sufficiency of evidence**

Evidence was sufficient to withstand defendant's motion for nonsuit in a prosecution for assault with intent to commit rape, though there was no evidence that defendant actually attempted coition, since defendant's actions in forcing prosecutrix into a stall in a restroom, forcing her to disrobe and to sit on the commode, rubbing his genitalia against hers and forcing her to perform oral sex gave rise to a reasonable inference that the assault upon prosecutrix was motivated, at some point, by an intent to commit rape.

10. **Criminal Law §§ 113, 114.1— instructions—explanation of law sufficient—no unequal stress to contentions**

Defendant's contentions that the trial court violated the requirements of G.S. 1-180 by failing to explain the law as it applied to his evidence and by giving unequal stress to the contentions of the State are without merit.

11. **Rape § 18.4— assault with intent to commit rape—failure to instruct on lesser offense—error**

In a prosecution for assault with intent to commit rape, the trial court did not err in failing to instruct the jury on assault with a deadly weapon since that was not a lesser included offense of the offense charged, or on the offense of simple assault, since all of the evidence showed that, if there was an assault, the assault was upon a female; however, the court did err in failing to instruct the jury on the lesser included offense of assault upon a female, since the factual issue separating the greater offense from the lesser, *i.e.*, intent, was not susceptible to clear cut resolution.

APPEAL by defendant from *McLelland, J.*, 27 September 1976 Session of WAKE Superior Court, docketed and argued as Case No. 103 at the Spring Term 1977.

Defendant was charged by indictments with kidnapping, Case No. 76CR27995, robbery with a dangerous weapon, Case No. 76CR27432-A, assault on a female with intent to commit rape, Case No. 76CR27432-B, and crime against nature, Case No. 76CR27432-C. The State's evidence tends to show that Lucille Wesley, aged 21, arrived at the Raleigh Greyhound Bus Terminal at about 3:30 a.m. on 7 July 1976. She was a resident of Bishopville, South Carolina, and was en route to Wendell, North Carolina, to visit relatives. After calling her relatives to notify them of her arrival, Miss Wesley returned to the lobby of the bus terminal and began to read a paperback book. She felt uncomfortable and went into the lobby of the women's restroom to con-

tinue her reading. However, just as she sat down, a man whom she had never seen before (later identified by her as defendant) burst into the restroom. He began to ask her personal questions, and when she attempted to leave, he pushed her back into the chair. Miss Wesley managed to get up and start to the door, but defendant blocked her, pushed her against the wall and started to kiss her. When she attempted to get away from him, defendant produced a knife and forced her to go to the last of the stalls in the restroom where he ordered her to disrobe. After she had partially disrobed, he forced her to sit on the commode and rubbed his private parts against hers, fondled her with his hands and then forced her to perform oral sex. Thereafter, he demanded and received two dollars from her. After warning her not to follow him, he left. Shortly after defendant departed, Miss Wesley told an employee of the bus terminal that she had been attacked while in the restroom of the terminal. He called the police, and after she told the officers what had happened, she was then taken to Wake Memorial Hospital where she received medical attention. Miss Wesley testified that she did not go into the stall in the restroom willingly, she did not submit to any of the acts she described willingly, or give defendant money willingly or voluntarily. She submitted to all of the defendant's demands because she feared he would harm her with the knife which he displayed.

The State also offered testimony of police officers who testified that Miss Wesley gave them a detailed description of defendant and the clothing worn by him. Defendant was apprehended at about 4:30 a.m. about ten blocks from the bus terminal. His clothing matched the description given by the victim. He was carrying a knife, and there were two one dollar bills in his shirt pocket.

There was expert testimony to the effect that fingerprints "lifted" from a chair in the lobby of the women's restroom at the Greyhound Bus Terminal matched fingerprints taken from defendant after he was placed in custody. Further, a newspaper carrier, who had known defendant for several years, testified that he observed defendant run from the Greyhound Bus Terminal during the early morning hours of 7 June 1976.

Defendant offered Ronnie McCullers and Mickey Wilson as his only witnesses. McCullers testified that Lucille Wesley solicited him to engage in sex for pay and suggested that the act

be consummated in the women's restroom of the bus terminal. He later saw her talking to defendant in the main lobby of the bus terminal. Wilson testified that he saw Lucille Wesley talking with defendant in the lobby. He said that he dozed off and that he and defendant later left the bus terminal together at about 4:30 a.m.

The jury returned verdicts of guilty as to each of the four charges. Defendant appealed from judgments imposing prison sentences of life imprisonment on the verdict of guilty of kidnapping, life imprisonment on the verdict of guilty of armed robbery, fifteen years on the verdict of assault with intent to commit rape and ten years on the verdict of crime against nature. On 16 February 1977, we allowed defendant's motion to bypass the Court of Appeals on the charge of assault with intent to commit rape and on the charge of crime against nature.

*Rufus L. Edmisten, Attorney General, by David S. Crump, Assistant Attorney General, for the State.*

*Thomas L. Barringer, for defendant appellant.*

BRANCH, Justice.

By his first assignment of error, defendant contends that G.S. 14-39 is unconstitutional on its face and as applied to him.

G.S. 14-39 in part provides:

(a) Any person who shall unlawfully confine, restrain, or remove from one place to another, any other person 16 years of age or over without the consent of such person, or any other person under the age of 16 years without the consent of a parent or legal custodian of such person, shall be guilty of kidnapping if such confinement, restraint or removal is for the purpose of:

(1) Holding such other person for ransom or as a hostage or using such other person as a shield; or

(2) Facilitating the commission of any felony or facilitating flight of any person following the commission of a felony; or

(3) Doing serious bodily harm to or terrorizing the person so confined, restrained or removed or any other person.

(b) Any person convicted of kidnapping shall be guilty of a felony and shall be punished by imprisonment for not less than 25 years nor more than life. If the person kidnapped, as defined in subsection (a), was released by the defendant in a safe place and had not been sexually assaulted or seriously injured, the person so convicted shall be punished by imprisonment for not more than 25 years, or by a fine of not more than ten thousand dollars ($10,000), or both, in the discretion of the court.

[1] Defendant first argues that he was denied due process of law upon his conviction under this statute because its provisions were so vague that men of common intelligence must guess as to its meaning and differ as to its application. This argument was answered adversely to defendant in *State v. Fulcher*, 294 N.C. 503, 243 S.E. 2d 338 (1978). There Justice Lake speaking for the unanimous Court stated:

G.S. 14-39, as herein construed, is not vague. The conduct which it forbids is clearly set forth in the statute. The punishment prescribed is severe but is not cruel or unusual in the constitutional sense. *State v. Cameron*, 284 N.C. 165, 200 S.E. 2d 186 (1973), *cert. den.*, 418 U.S. 905; *State v. Carter*, 269 N.C. 697, 153 S.E. 2d 388 (1967); *State v. Davis*, 267 N.C. 126, 147 S.E. 2d 570 (1966). Consequently, the statute, on its face, does not violate the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States, or the Law of the Land Clause of Article I, § 19, of the Constitution of North Carolina, or the Cruel or Unusual Punishment Clause of either Constitution. The statute applies to all who violate it without exception or classification. Consequently, it does not, upon its face, violate the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States or the like clause contained in Article I, § 19, of the Constitution of North Carolina. 294 N.C. at 525.

Defendant further argues that in addition to being unconstitutionally vague, G.S. 14-39 also violates the requirement of due process of law by being "overly broad." The fault of overbreadth is often very intimately related to the vice of "vagueness." Note, *The First Amendment Overbreadth Doctrine*,

83 Harv. L. Rev. 844 (1970). However, the overbreadth doctrine is a separate principle devised to strike down statutes which attempt to regulate activity which the State is constitutionally forbidden to regulate, such as activity protected by the First Amendment to the United States Constitution. *E.g., Zwickler v. Koota,* 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed. 2d 444 (1967); *United States v. Dellinger,* 472 F. 2d 340, 357 (7th Cir. 1972), *cert. den.,* 410 U.S. 970 (1973); *State ex rel. Purcell v. Superior Court,* 111 Ariz. 582, 584, 535 P. 2d 1299, 1301 (1975); Note, 83 Harv. L. Rev., *supra.* G.S. 14-39 does not interfere or prohibit any activity protected by the First Amendment or any other Federal or State constitutional provision. It is a penal statute completely within the State's police power. The doctrine of overbreadth has no application to it. We, therefore, hold that G.S. 14-39 is neither unconstitutionally vague nor "overbroad."

[2]    Defendant assigns as error the failure of the trial judge to allow his motion to arrest judgment upon the verdicts of guilty of crime against nature, robbery with a dangerous weapon and assault with intent to commit rape. He argues that these crimes are lesser included offenses of the crime of kidnapping as defined by G.S. 14-39. In support of his position, he relies upon the well-established rule that when an accused is convicted of first degree murder under the felony murder rule pursuant to G.S. 14-17, there can be no additional punishment for the underlying felony. *State v. Williams,* 284 N.C. 67, 199 S.E. 2d 409 (1973); *State v. Carroll,* 282 N.C. 326, 193 S.E. 2d 85 (1972); *State v. Thompson,* 280 N.C. 202, 185 S.E. 2d 666 (1972). The rationale of this rule was clearly stated in *State v. Thompson, supra,* by Chief Justice Bobbitt in the following language:

> . . . When a person is convicted of murder in the first degree no separate punishment may be imposed for any lesser included offense. Technically, feloniously breaking and entering a dwelling is never a lesser included offense of the crime of murder. However, in the present and similar factual situations, a cognate principle applies. Here, proof that defendant feloniously broke into and entered the dwelling of Cecil Mackey, to wit, Apartment #3, 3517 Burkland Drive, was an essential and indispensable element in the State's proof of murder committed in the perpetration of the felony of feloniously breaking into and entering that particular dwell-

ing. The conviction of defendant for felony-murder, that is, murder in the first degree without proof of malice, premeditation or deliberation, was based on a finding by the jury that the murder was committed in the perpetration of the felonious breaking and entering. In this sense, the felonious breaking and entering was a lesser included offense of the felony-murder. Hence, the separate verdict of guilty of felonious breaking and entering affords no basis for additional punishment. If defendant had been acquitted in a prior trial of the separate charge of felonious breaking and entering, a plea of former jeopardy would have precluded subsequent prosecution of the theory of felony-murder. [Citation omitted.] 280 N.C. at 215-216.

This is inapposite to kidnapping as defined in G.S. 14-39. The charges of crime against nature, assault with intent to commit rape and robbery with a dangerous weapon were alleged in the bill of indictment charging kidnapping as the *purposes* for which the defendant confined and restrained the victim. The charges so alleged were not *elements* of the offense of kidnapping which the State had to prove as is the case of the underlying felony in the felony murder rule. When the State proves the elements of kidnapping and the purpose for which the victim was confined or restrained, conviction of the kidnapping may be sustained. Thus, the crimes of crime against nature, assault with intent to commit rape and robbery with a dangerous weapon are separate and distinct offenses and are punishable as such. *State v. Dammons*, 293 N.C. 263, 237 S.E. 2d 834 (1977). Further, in instant case, since the trial judge entered a separate, complete judgment upon each verdict whereby defendant was sentenced to imprisonment in the State's prison, the sentences so imposed run concurrently as a matter of law. 4 Strong's North Carolina Index 3d, *Criminal Law*, Section 140.1 (1976). Consequently, defendant has failed to show that he suffered substantial prejudice from the denial of his motion.

This assignment of error is overruled.

We note in passing that some of our opinions refer to the crime defined in G.S. 14-39A as "aggravated kidnapping." This is a misnomer. The proper term for the crime there defined is "kid-

napping." Subsection (b) of the statute states the punishment for kidnapping as well as a lesser punishment when certain mitigating circumstances appear.

[3] Defendant assigns as error the ruling of the trial court which permitted the prosecutor to consult with a psychologist during the *voir dire* examination of the jury.

The record shows that Mr. Jeff Frederick, a student psychologist was present in the courtroom during jury selection and that the district attorney conferred with him before and during the jury selection. Mr. Frederick was present in the courtroom as a matter of academic interest, and he was neither retained nor paid by the State. The nature of the advice given by Mr. Frederick to the prosecutor is not disclosed.

Defendant contends that the presence of Mr. Frederick in the courtroom during the jury selection denied him his constitutional right to assistance of counsel, to equal protection under the laws, and to a fair and impartial trial. He cites no authority or gives no suggestion as to how the presence of the psychologist resulted in a denial of these constitutional rights.

The purpose of the *voir dire* examination of prospective jurors is to secure an impartial jury. *State v. Allred,* 275 N.C. 554, 169 S.E. 2d 833 (1969). Control of the examination of prospective jurors rests in the sound discretion of the trial court, and in order for a defendant to show that the court's regulation of jury selection constitutes reversible error, he must establish both that the trial judge abused his discretion and that he suffered prejudice as a result of such abuse. *State v. Young,* 287 N.C. 377, 214 S.E. 2d 763 (1975); *State v. Bryant,* 282 N.C. 92, 191 S.E. 2d 745 (1972), *cert. den.,* 410 U.S. 958, 410 U.S. 987 (1973).

Here defendant has presented no evidence or reasonable argument which would tend to show that Mr. Frederick's presence in the courtroom during the *voir dire* of the jury precluded the selection of an impartial jury. Defendant did not seek the aid of Mr. Frederick or any other psychologist. In fact, he does not even contend that the jury as finally impaneled was partial or biased. Under these circumstances, we are unable to say that Judge McLelland abused his discretion in permitting Mr.

Frederick to consult with the district attorney during the *voir dire* of the jury or that defendant has demonstrated prejudice resulting from this ruling.

[4]    Defendant assigns as error the trial judge's ruling admitting the in-court identification of defendant by the prosecuting witness.

On direct examination of Lucille Wesley, the following exchange occurred:

Q. Well, who was it that came in?

A. Him. (Pointing)

Q. The defendant questioned?

A. Yes, sir.

MR. BARRINGER: Objection, your Honor.

COURT: Overruled.

The defendant cannot challenge an in-court identification so as to obtain a *voir dire* hearing without, at least, a timely general objection. *State v. Cook*, 280 N.C. 642, 187 S.E. 2d 104 (1972); *State v. Blackwell*, 276 N.C. 714, 174 S.E. 2d 534, *cert. den.*, 400 U.S. 946 (1970). Further, an objection to incompetent evidence must be interposed at the time the question intended to elicit it is asked, and a motion to strike an incompetent answer should be made when the answer is given. When an objection is not timely made, it is waived. *State v. Davis*, 284 N.C. 701, 202 S.E. 2d 770, *cert. den.*, 419 U.S. 857 (1974); *State v. Hunt*, 223 N.C. 173, 25 S.E. 2d 598 (1943). Here defendant failed to timely object or to move to strike.

Later, while still on direct examination and after the witness had described part of the treatment administered to her at the hospital on the night the crimes were committed, the record discloses the following:

Q. Anything else?

A. Not no more than identifying the guy at the hospital.

MR. BARRINGER: We would object and move to strike that last answer.

COURT: I didn't hear what it was. I don't know whether your motion should be granted or not.

MR. BARRINGER: She said something about not doing anything else at the hospital other than identifying someone.

COURT: Denied.

We see no prejudicial error in the witness's reply concerning identifying someone at the hospital. There was no evidence that she referred to defendant. Further, the record discloses that at some time after the crimes · were committed and before the defendant was taken into custody, the witness gave the police a detailed description of defendant and his clothing. It is entirely possible that this rather inarticulate witness was referring to the giving of this description to police officers rather than to a personal confrontation with defendant or any other person. Other than this ambiguous statement, nothing appears in this record which even tends to show the existence of any pretrial identification procedures of a suggestive nature. The witness's in-court identification of defendant was positive and unequivocal. Her description of her assailant prior to his arrest was detailed and accurate.

We find no error in the trial judge's ruling admitting the identification testimony of the prosecuting witness.

[5] Defendant argues that the trial court erred by sustaining the State's objections to his cross-examination of the prosecuting witness concerning the identity of the father of her illegitimate child and as to whether she had had sexual relations since the birth of the child.

When a defendant has been charged with rape or with assault with intent to commit rape, evidence of the prosecutrix's reputation for unchastity is admissible both to attack her credibility as a witness and to show the likelihood of consent. *State v. Grundler*, 251 N.C. 177, 111 S.E. 2d 1 (1959), *cert. den.*, 362 U.S. 917 (1960); 65 Am. Jur. 2d, *Rape*, Sections 82, 86 (1972). The testimony of specific acts of unchastity with someone other than defendant is, however, incompetent. *State v. Grundler*, *supra*.

In instant case, the prosecuting witness answered that she knew the identity of her child's father. The answer was before the jury and was not stricken from the record. Thereafter, the defense attorney asked the witness whether she had engaged in sexual relations since the birth of her child. The trial judge sustained the State's objection. In our opinion, the trial judge should have permitted the witness to answer this question; however, the record fails to show what the witness's answer would have been. We are, therefore, unable to determine whether the exclusion of this evidence was prejudicial. *See, State v. Little,* 286 N.C. 185, 209 S.E. 2d 749 (1974); *State v. Felton,* 283 N.C. 368, 196 S.E. 2d 239 (1973); *State v. Brewer,* 202 N.C. 187, 162 S.E. 363 (1932).

[6] Defendant next contends that the trial court erred by overruling his objection to and his motion to strike the testimony of the witness Phillip King.

In response to a question concerning when he first saw the victim, the witness replied, "That was after she had been raped." We first note that defendant was not charged with rape, and there was no evidence from which the jury could infer that defendant had in fact raped the prosecuting witness. It is obvious that the witness was not attempting to testify that in his opinion the victim had been raped but was merely using the incident which occurred in the restroom as a point óf reference to time. Although we are of the opinion that the trial judge should have stricken this answer, we do not believe under the circumstances of this case that the jury was misled by Mr. King's statement or that the verdict would have been different had the witness's answer been stricken.

[7] By his next assignment of error, defendant contends that the trial court erred by denying his motion for mistrial.

Patricia Castriano, a registered nurse, testified for the State concerning the medical treatment administered to Lucille Wesley following the assault. The witness testified that the doctor in attendance diagnosed the victim's chest pains as resulting from tension rather than from injury. The witness then stated:

> I felt that the pain in her chest was emotional at that time because I mean she obviously was under great stress. I can usually pick them out, ones fussing and fuming for no good reason.

Defendant's objection to this testimony was sustained and his motion to strike was granted. The trial judge, however, denied defendant's subsequent motion for a mistrial.

Defendant argues that the above-quoted testimony was tantamount to a statement by the witness that she could tell that the victim was telling the truth and that the court's instructions to the jury to disregard this testimony were insufficient to remove its prejudicial impact. We disagree.

The witness did not express an opinion as to the veracity of Lucille Wesley. The challenged statement was in no way related to the prosecuting witness's in-court testimony but simply was a statement of opinion by the witness that the prosecuting witness's complaints concerning chest pains were more related to an emotional upset than to physical injury.

A motion for mistrial is addressed to the sound discretion of the trial court. *State v. Daye,* 281 N.C. 592, 189 S.E. 2d 481 (1972); *State v. McNeil,* 280 N.C. 159, 185 S.E. 2d 156 (1971). Here the challenged testimony appears to favor rather than prejudice defendant. Any possible prejudice was removed by the court's prompt curative instruction. We find no abuse of discretion in the trial court's denial of defendant's motion for mistrial.

[8]  Defendant also argues that the trial court erred by allowing a fingerprint expert to testify that a palmprint found at the scene of the assault was defendant's. Relying upon *State v. Smith,* 274 N.C. 159, 161 S.E. 2d 449 (1968), defendant contends that the circumstances in instant case are not such that the palmprint found at the scene of the crime could have been impressed only at the time the alleged crime was committed and that the expert's testimony, therefore, should have been excluded. *State v. Smith, supra,* and the cases there cited are cases in which the *sufficiency* of circumstantial evidence to withstand a motion for judgment of nonsuit is the question before the Court rather than the admissibility of fingerprint evidence. *State v. Palmer,* 230 N.C. 205, 52 S.E. 2d 908 (1949); *State v. Huffman,* 209 N.C. 10, 182 S.E. 705 (1935). *See also,* 30 Am. Jur. 2d, *Evidence,* Section 1144 (1967).

It is well established that evidence of the correspondence of fingerprints given by an expert is admissible on the question of identity. *State v. Frazier,* 280 N.C. 181, 185 S.E. 2d 652 (1972);

*State v. Tew*, 234 N.C. 612, 68 S.E. 2d 291 (1951); *State v. Helms*, 218 N.C. 592, 12 S.E. 2d 243 (1940). The admissibility of such evidence is consistent with the rule of relevance which permits the introduction of any evidence which "has any logical tendency, however slight, to prove a fact at issue in the case." 1 Stansbury's North Carolina Evidence, Section 77 (Brandis Rev. 1973). Here defendant's pleas of not guilty placed upon the State the burden of proving every element of the charged crimes including identity. The fingerprint evidence was, therefore, admissible to corroborate the prosecuting witness's identification of defendant as the perpetrator of the charged crimes.

**[9]** Defendant's next assignment of error is that the trial court erred by denying his motion for judgment as of nonsuit on the charge of assault with intent to commit rape. He argues that the State's evidence fails to show that the assault upon Lucille Wesley was made with an intent to commit rape.

In discussing the sufficiency of the evidence necessary to submit a charge of assault with intent to commit rape to the jury, this Court, in *State v. Gammons*, 260 N.C. 753, 755-756, 133 S.E. 2d 649 (1963), held:

> . . . It is not necessary to complete the offense that the defendant retained the intent throughout the assault, but if he, at any time during the assault, have an intent to gratify his passion upon the woman, notwithstanding any resistance on her part, the defendant would be guilty of the offense. *State v. Petry*, 226 N.C. 78, 81, 36 S.E. 2d 653. Intent is an attitude or emotion of the mind and is seldom, if ever, susceptible of proof by direct evidence, it must ordinarily be proven by circumstantial evidence, i.e., by facts and circumstances from which it may be inferred. *State v. Petry, supra; State v. Adams*, 214 N.C. 501, 199 S.E. 716.

*Accord, State v. Hudson*, 280 N.C. 74, 185 S.E. 2d 189 (1971), *cert. den.*, 414 U.S. 1160 (1974). *See also*, 65 Am. Jur. 2d, *Rape*, Section 24 (1972); 75 C.J.S., *Rape*, Section 77 (1952).

In *State v. Hudson, supra*, the accused for some period of time brutally performed sexually motivated assaults upon a fourteen year old girl without actually attempting coition. Holding that the evidence presented was sufficient to withstand the

defendant's motion for nonsuit on the charge of assault with intent to commit rape, this Court, speaking through Chief Justice Sharp, stated:

> Although Clemmie did not testify that defendant ever attempted coition, his attack upon her was indisputably sexually motivated, and we think the jury could reasonably infer from his treatment of her that defendant intended at some time during his continuous assaults to rape Clemmie if he could, notwithstanding any resistance on her part. . . . 280 N.C. at 77.

The evidence presented by the State tends to show that after defendant had forced Miss Wesley into the stall at knife point and forced her to remove part of her clothing, he forced her to sit on the commode and prop her feet on the walls of the stall. He then rubbed his genitalia against hers and thereafter forced the victim to perform oral sex. While there is no evidence that defendant actually attempted coition, defendant's actions were obviously designed to gratify some sort of sexual desire, and we are of the opinion that the evidence presented gives rise to a reasonable inference that the assault upon Miss Wesley was motivated, at some point, by an intent to commit rape. Such an inference is sufficient to withstand defendant's motion for nonsuit, and this assignment of error is, therefore, overruled.

[10] By his next two assignments of error, defendant contends that the trial court violated the requirements of G.S. 1-180 by failing to explain the law as it applied to his evidence and by giving unequal stress to the contentions of the State.

In recapitulating the evidence presented by defendant, the trial judge stated:

> The defendant's evidence tends to show that Ronnie Mc-Cullers, as he testified, was outside the Greyhound Bus Station at 2:45 to 3:00 o'clock on the morning of June 7, 1976; that Miss Wesley approached him, asked him for a match and stated that she would date him for $10.00; that McCullers told her that he didn't go that way; that McCullers then saw the defendant in the waiting room of the bus station talking with Miss Wesley; that he also saw Mickey Wilson in the station; that he also saw five or six people in that station that

he knew; that Mickey Wilson, as he testified, went to the Greyhound Bus Station with the defendant Darnell Banks at about two or three or four o'clock; that the defendant sat and rapped with Miss Wesley in the waiting room of the station; that Wilson then took a 15 minute nap and was waked up by the defendant and that he and the defendant left together out the front door to Jones Street at about 4:30 or 5:00 o'clock in the morning, after which each went his own way; that Wilson knows Franklin Cherry, the paper boy, and saw him at the Greyhound Station that night or possibly at the Trailway Station.

The trial judge must, without special request, charge the law applicable to the substantive features of the case arising on the evidence and apply the law to the essential facts of the case. Volume 7, Strong's North Carolina Index 2d, *Trial*, Section 33. However, it is error for the court to submit to the jury an issue based on evidence which raises a mere possibility or conjecture. *Lunsford v. Marshall*, 230 N.C. 610, 55 S.E. 2d 194 (1949).

Defendant's evidence as recapitulated by the trial judge was fairly and fully stated. In our opinion, this testimony at most amounts to a mere scintilla of evidence tending only to raise a suspicion that the victim consented to go to the restroom for the purpose of engaging in sexual intercourse with defendant. Thus, any finding by the jury that any of the acts committed by defendant were by and with the consent of the victim would have been based on speculation and conjecture. Therefore, the trial judge adequately explained the law and applied it to the facts as presented by the State and defendant.

Defendant's argument that the trial judge failed to give equal stress to his contentions cannot be sustained. In this connection, the court charged:

> The defendant contends that you should not so find the facts to be, members of the jury; that you should not believe the testimony of Miss Wesley; that upon your carefully weighing all of the testimony for both the State and the defendant and your drawing reasonable and proper inferences from that testimony, that you should not conclude that the facts are as the State contends you should find them to be beyond a reasonable doubt.

The defendant contends that in any fair view of all of the evidence you should at least reasonably doubt that he is guilty of any of the four offenses charged against him.

The defendant contends that you should have a reasonable doubt from the evidence of the State that the defendant intended to rape Miss Wesley.

The defendant contends that you should have a reasonable doubt as to his guilt of any offense and that you should upon the law's presumption of innocence and upon such reasonable doubt return verdicts of acquittal as to each of the charges against him.

It is uncontradicted that when a trial judge elects to state the contention of one party, he must equally stress the contention of the opposing party. This does not mean that the statement of contentions of the respective parties must be of equal length for where one party's evidence is meager, his contentions must be few in contrast with those of an opposing party who offers a great volume of testimony which raises many pertinent contentions. *State v. King*, 256 N.C. 236, 123 S.E. 2d 486 (1962). Having decided that defendant's evidence failed to raise reasonable inferences of consent, the only remaining contentions to be stated were those raised by his plea of not guilty. These contentions were fully given by the court.

For reasons stated, these assignments of error are overruled.

[11] Finally, defendant argues that the trial judge erred in his charge on assault with intent to commit rape by failing to instruct the jury on the lesser included offenses of assault with a deadly weapon, assault upon a female and simple assault.

In ruling upon the necessity of submitting lesser included offenses for consideration by the jury, this Court, in *State v. Bell*, 284 N.C. 416, 419, 200 S.E. 2d 601 (1973), held:

When a defendant is indicted for a criminal offense, he may be convicted of the charged offense or a lesser included offense when the greater offense charged in the bill of indictment contains all of the essential elements of the lesser, all of which could be proved by proof of the allegations in the in-

dictment. Further, when there is some evidence supporting a lesser included offense, a defendant is entitled to a charge thereon even when there is no specific prayer for such instruction, and error in failing to do so will not be cured by a verdict finding a defendant guilty of a higher degree of the same crime.

See, generally, 4 Strong's North Carolina Index 3d, *Criminal Law*, Section 115 (1977).

An essential element of the crime of assault with a deadly weapon is the use of a deadly weapon, an element not found in the definition of assault with intent to commit rape. Accordingly, assault with a deadly weapon is not a lesser included offense of assault with intent to commit rape, and there was no error in failing to instruct the jury on the charge of assault with a deadly weapon. Neither did the trial judge err by failing to submit the charge of simple assault since all the evidence shows that if there was an assault, the assault was upon a female. *See, State v. Church*, 231 N.C. 39, 55 S.E. 2d 792 (1949).

It is clear that the crime of assault upon a female is a lesser included offense of assault with intent to commit rape, *State v. Gammons, supra*, and here there was evidence which would support either a conviction of assault with intent to commit rape or a conviction of assault upon a female. The factual element which distinguishes assault with intent to commit rape from assault upon a female is *intent* at the time of the assault, and when evidence of intent to commit rape is overwhelming or uncontradicted, it would not be error to submit only the greater offense. *See, e.g., State v. Armstong*, 287 N.C. 60, 212 S.E. 2d 894 (1975); *State v. Vick*, 287 N.C. 37, 213 S.E. 2d 335, *cert. den.*, 423 U.S. 918 (1975); *State v. Arnold*, 284 N.C. 41, 199 S.E. 2d 423 (1973) (holding no error in failing to submit the lesser included offenses of rape when all evidence reveals completed act of intercourse and the only disputed issue is consent). Here, however, the factual issue which separates the greater offense from the lesser, *i.e.*, intent, is not susceptible to clear cut resolution. Under these circumstances, the trial judge should have submitted to the jury the lesser included offense of assault upon a female.

For the reasons stated, there must be a new trial on the charge of assault with intent to commit rape. We have carefully

reviewed this entire record and find no error sufficient to warrant disturbing the verdicts and judgments rendered upon the charges of kidnapping, robbery with a dangerous weapon, and crime against nature.

In Case No. 76CR27432-A, robbery with a dangerous weapon—No error.

In Case No. 76CR27432-C, crime against nature—No error.

In Case No. 76CR27995, kidnapping—No error.

In Case No. 76CR27432-B, assault with intent to commit rape—New trial.