STATE OF NORTH CAROLINA v. BENNIE CARSELL WILHITE, JOHN EDGAR RANKIN AND RALPH WAYNE RANKIN

No. 569A82

(Filed 7 July 1983)

**1. Rape and Allied Offenses § 7— sentence for first degree rape**

The trial judge was not authorized to sentence defendants to minimum and maximum terms of years for first degree rape since first degree rape was punishable only by a mandatory life sentence when the crimes were committed in November and December 1980 and under the Fair Sentencing Act which became effective 1 July 1981. G.S. 14-1.1(a)(2); G.S. 14-27.2(b).

**2. Criminal Law § 169— exclusion of testimony—failure of record to show answers of witness**

Where the trial court sustained objections to the cross-examination of a State's witness and the record failed to show what the answers of the witness would have been, it cannot be determined that the court's ruling, even if error, was prejudicial.

**3. Criminal Law §§ 89.9, 89.10— impeachment of victim—acts of misconduct—inconsistent statements on collateral matter—testimony of other witnesses**

Testimony by a defense witness in a kidnapping case that about a month after the incident in question, the victim "left with a perfect stranger at 2:00 or 3:00 a.m. and that at a later point he had sex with the lady, and she made statements to him that she had sex for hire" was not admissible to impeach

the victim's testimony and to show that she might have consented to go, instead of being forced to go, with defendants, since specific acts of misconduct may be inquired about for impeachment purposes only on cross-examination of the witness to be impeached and may not be proved by other witnesses. Furthermore, testimony by the witness that he was told by the victim that she was put out of the house by her mother and had to live with a friend for having sex with her stepfather was not admissible to impeach the victim's contrary testimony since a witness's prior inconsistent statements about a collateral matter may be inquired about only on cross-examination of the witness to be impeached and may not be proved by other witnesses.

BEFORE *Judge Rousseau* and a jury at the 30 March 1981 Criminal Session of GUILFORD Superior Court defendants Rankin were found guilty of first degree rape and kidnapping. John Rankin was sentenced to forty to sixty years' imprisonment for the kidnapping conviction and sixty to seventy years' imprisonment for the rape conviction, the sentences to run consecutively. Ralph Rankin was sentenced to sixty to seventy years' imprisonment for the rape conviction and sixty to seventy years' imprisonment for the kidnapping conviction, the sentences to run concurrently. Defendant Wilhite was found guilty of first degree rape and received a sentence of sixty to seventy years' imprisonment.[1]

The Court of Appeals found no error in any of the defendants' rape convictions in an opinion written by Judge Becton and joined by Judges Hill and Hedrick. The majority of the panel, however, awarded the Rankin defendants new trials on the kid-

---

1. Although neither the state nor defendants have raised this point and the cases are not actually before us, we note that the sentences in the rape cases are not authorized by statute. These crimes were committed in November and December 1980. At that time first degree rape convictions were punishable only by a mandatory sentence of life imprisonment. Law of May 29, 1979, ch. 682, § 1, 1979 N.C. Sess. Laws, 1st Sess. 725 (amended by Law of June 25, 1980, ch. 1316, § 4, 1979 N.C. Sess. Laws, 2d Sess. 247, 248) (current version at G.S. 14-27.2). Even under the Fair Sentencing Act, which became effective on 1 July 1981, first degree rape is a Class B felony which is punishable by a mandatory life sentence. G.S. 14-1.1(a)(2) & 14-27.2(b). The trial judge, therefore, in the rape convictions, was not authorized to sentence these defendants to minimum and maximum terms of years. The same sentencing error occurred in Wilhite's case. We have, therefore, determined, in the exercise of our supervisory powers and by separate order, to direct the Court of Appeals to remand all the rape cases to the superior court for the imposition of sentences of life imprisonment. *See State v. Woods*, 307 N.C. 213, 224, 297 S.E. 2d 574, 581 (1982). All defendants and their counsel shall be present in open court when the new sentences are pronounced.

napping charges over the dissent of Judge Hedrick. 58 N.C. App. 654, 294 S.E. 2d 396 (1982). The state appeals, pursuant to G.S. 7A-30(2), the award of new trials on the kidnapping charges to the Rankin defendants.[2]

*Rufus L. Edmisten, Attorney General, by John R. B. Matthis, Special Deputy Attorney General; John F. Maddrey, Assistant Attorney General; and Michael Rivers Morgan, Associate Attorney, for the State appellant.*

*Pinkney J. Moses, for defendant appellee John Rankin; Joel G. Bowden, for defendant appellee Ralph Wayne Rankin.*

EXUM, Justice.

The questions presented are whether the trial court committed reversible error in not permitting defendants Rankin in the kidnapping cases (1) to cross-examine the prosecuting witness about specific acts of misconduct and (2) to prove these acts by the testimony of other witnesses. A majority of the Court of Appeals concluded that error was committed. We disagree. As to the first question, the answers the witness might have given to the questions were not proffered for the record. As to the second question, the rulings were correct under well-established evidence rules governing proof of character. We reverse the Court of Appeals' decision awarding defendants Rankin a new trial in the kidnapping cases. We also remand, for the reasons set forth below, all three defendants' rape cases for resentencing.

The state's evidence at trial tended to show the prosecuting witness, Karen Siler, age 16, went with friends to the H & H Grill in Greensboro about 11 p.m. on 30 November 1980. Defendants entered the grill sometime after Siler and friends did. When Siler was returning from the restroom defendant John Rankin touched her private parts; defendant Ralph Rankin grabbed and kissed her. He asked her if he could go home with her, then he threatened her with a gun if she began crying. He also threatened to

2. Defendant Wilhite was acquitted of the kidnapping charge and there was no dissent from the majority's treatment of his rape conviction, so he has no right of appeal to this Court for review of the Court of Appeals' decision affirming his conviction. G.S. 7A-30(2). Wilhite filed a notice of appeal, however, and a petition for a writ of certiorari in this Court on 14 October 1982. His appeal was dismissed and his petition denied on 3 November 1982.

harm her friends if she told them of their conversation. Fearful for her friends, she told them to leave the grill without her. Defendants put Siler in their car and drove her to an apartment where they forced her to have sexual intercourse with them.

Defendant John Rankin did not testify at trial. Defendant Ralph Rankin testified he gave his brother, John, defendant Wilhite and Siler a ride to an apartment from the H & H Grill during the early morning hours of 1 December 1980. He went home after dropping them off. He denied kissing Siler, threatening her or having sexual intercourse with her.

[2] During the testimony of Siler defendant John Rankin's counsel sought to cross-examine her about what counsel said were "prior acts of misconduct"; specifically, the alleged act of misconduct was "that she used to live with Mr. Marshall and that she worked for Mr. Marshall as a prostitute." The trial court sustained the state's objection to this kind of cross-examination. No questions were put to this witness on this subject nor did she ever indicate what her answers would have been had the questions been put. Since we cannot know what the witness's answers to this line of inquiry would have been, we cannot say that the trial court's ruling was reversible error, even if it was error to preclude the cross-examination. *State v. Banks*, 295 N.C. 399, 409-10, 245 S.E. 2d 743, 750 (1978); *State v. Miller*, 288 N.C. 582, 593-94, 220 S.E. 2d 326, 334-35 (1975); *State v. Davis*, 284 N.C. 701, 716, 202 S.E. 2d 770, 780-81, *cert. denied*, 419 U.S. 857 (1974); 4 N.C. Index 3d, Criminal Law § 169.6 (1976). "Where the record fails to show what the answer would have been had the witness been permitted to answer, the exclusion of such testimony cannot be held prejudicial. [Citations omitted.] This rule applies not only to direct examination but to questions on cross-examination as well." *State v. Miller, supra*, 288 N.C. at 593, 220 S.E. 2d at 335; *accord, State v. Banks, supra*, 295 N.C. at 410, 245 S.E. 2d at 750.

Also during the testimony of state's witness Deborah Wilson, defendant John Rankin through counsel attempted to cross-examine her about an incident when Siler allegedly "had approximately 18 men waiting on the stairwell to visit her in her room." The trial court sustained the state's objection. The matter was not pursued, and what the witness's answer might have been does not appear. For reasons already given, we cannot say that the trial court's ruling, even if error, warrants a new trial.

[3] Finally defendant Ralph Rankin sought to offer the testimony of Thomas Braswell. This testimony, according to defendant Ralph Rankin's counsel, would have shown that Siler "had prior sexual activities that are inconsistent with what she told on the witness stand." Specifically, Bowden said Braswell would testify, "That on the occasion he met this young lady, she left with a perfect stranger at 2:00 or 3:00 a.m. and that at a later point he had sex with the lady, and she made statements to him that she had sex for hire. This happened about a month after this incident took place." Defendant John Rankin's counsel also stated, "This witness' testimony will also indicate that he was told by Miss Siler that she was put out of the house by her mother and had to live with Deborah Wilson for having sex with her stepfather." Siler had earlier testified, "My mother said it would be up to me if I wanted to stay with Deborah. She didn't send me over there to stay."

The trial court sustained the state's objection to the proffered testimony of Braswell. Defendants argue Braswell's testimony should have been admitted to impeach Siler because it shows both prior acts of misconduct and a prior inconsistent statement on her part. They also argue that, as prior acts of misconduct, the evidence was admissible in the kidnapping case on the issue of whether Siler was taken by force and against her will or whether she consented to go with defendants from the grill to the apartment.

Well-established evidence rules make it clear the trial court correctly sustained the state's objection to Braswell's proffered testimony. Siler's character was not directly in issue. This testimony's only possible relevance in the kidnapping cases was to disparage, or impeach, her testimony, or to show that she might have consented to go, instead of being forced to go, with defendants. For purpose of impeachment, specific acts of misconduct may be inquired of only on cross-examination of the witness to be impeached; they may not be proved by other witnesses. *State v. Finch*, 293 N.C. 132, 143, 235 S.E. 2d 819, 825 (1977); *State v. Monk*, 286 N.C. 509, 517-18, 212 S.E. 2d 125, 132 (1975). The same rule holds for prior inconsistent statements about collateral matters. As stated in *State v. Green*, 296 N.C. 183, 192-93, 250 S.E. 2d 197, 203 (1978):

A witness may be cross-examined by confronting him with prior statements inconsistent with any part of his testimony, but where such questions concern matters collateral to the issues, the witness's answers on cross-examination are conclusive, and the party who draws out such answers will not be permitted to contradict them by other testimony. *State v. Mack*, 282 N.C. 334, 193 S.E. 2d 71 (1972); *State v. Long*, 280 N.C. 633, 187 S.E. 2d 47 (1972); 1 Stansbury, N.C. Evidence § 46 (Brandis rev. 1973).

In the instant case, Siler's relationship with her mother and stepfather was clearly collateral to the issue of her consent to accompany defendants.

The character of the prosecuting witness in a *rape* case, however, has traditionally been allowed to be shown by testimony of other witnesses as bearing on the issue of consent.[3] *State v. Goss*, 293 N.C. 147, 235 S.E. 2d 844 (1977); *State v. Davis*, 291 N.C. 1, 229 S.E. 2d 285 (1976); *State v. Stegmann*, 286 N.C. 638, 213 S.E. 2d 262 (1975), *death penalty vacated*, 428 U.S. 902 (1976). But even in rape cases the rule has been that these other witnesses are limited to testifying only about the general reputation of the prosecuting witness; they were not allowed to testify regarding her specific acts of misconduct, sexual or otherwise, to prove her character. *State v. Banks*, *supra*, 295 N.C. at 409-10, 245 S.E. 2d at 750; *State v. Grundler*, 251 N.C. 177, 191-92, 111 S.E. 2d 1, 11-12 (1959), *cert. den.*, 362 U.S. 917 (1960).[4] Defendants argue that they should have been allowed to prove the allegedly bad character of

---

3. *But see* the Rape Victim Shield Statute, G.S. 8-58.6, which prohibits evidence of certain "sexual behavior" even for purposes of impeachment on cross-examination. *State v. Fortney*, 301 N.C. 31, 269 S.E. 2d 110 (1980).

4. We need not address whether the Rape Victim Shield Statute would now permit other witnesses to testify to evidence of complainant's specific acts of misconduct under subsections (b)(1), (2), (3) and (4) for the limited purposes there set out. *See* 1 Brandis, North Carolina Evidence § 105 (2d rev. ed. of Stansbury's N.C. Evidence, 1982), for a suggestion that it might. Even if the Rape Victim Shield Statute makes admissible evidence that under our cases would have been inadmissible, it would seem to apply by its terms only to "rape or sex offense cases." We have before us only the kidnapping cases. Furthermore, how Braswell would have actually testified does not appear in the record. Counsel's descriptions of what Braswell might have said are too cryptic and ambiguous for us to say that Braswell's testimony would have been admissible under the Rape Victim Shield Statute.

Siler in the kidnapping cases on the issue of whether she consented to go with them from the grill to the apartment, even if the Rape Victim Shield Statute might have precluded such evidence in the rape cases — an argument with which a majority of the Court of Appeals agreed. But the evidence defendants sought to offer through the testimony of Braswell was of specific acts of misconduct. That is what makes the evidence inadmissible.[5]

For the reasons given the Court of Appeals' decision insofar as it ordered new trials in the kidnapping cases against defendants John Rankin and Ralph Rankin is

Reversed.

5. For a concise, accurate summary of the rules in this area, which ought to be thoroughly familiar to every trial lawyer, see 1 Brandis, North Carolina Evidence, §§ 105, 107, 110, and 111 (2d rev. ed. of Stansbury's N.C. Evidence, 1982).