451 So.2d 1386 (1984)
Dennis Scott KAPLAN, Appellant,
v.
STATE of Florida, Appellee.
No. 82-867.
District Court of Appeal of Florida, Fourth District.
June 13, 1984.
William Snow Frates and Lauri B. Waldman of Frates, Beinstock & Sheehe, Miami, and Windsor, Bernstein & Byrne, Plantation, for appellant.
Jim Smith, Atty. Gen., Tallahassee, and Lydia M. Valenti, Asst. Atty. Gen., West Palm Beach, for appellee.
HURLEY, Judge.
Dennis Kaplan was convicted of sexual battery.[1] The trial court withheld imposition of sentence and placed the defendant on three years' probation with the special condition that he serve 120 days in the county jail. On appeal, the defendant complains that the trial court erred in applying Florida's rape victim shield statute[2] to limit cross-examination of the victim. We disagree.
The victim in this case accompanied her boyfriend to a bar. While there, she became upset with her boyfriend for paying attention to other female patrons and, in *1387 response, she struck up a conversation with the defendant. After a short time, she agreed to leave with the defendant to go to another bar. When they found that the second bar was closed, the victim asked to be driven back to the first bar. The defendant, however, drove in the opposite direction and eventually pulled into an open field. There he beat the victim about the head and chest and committed vaginal and anal penetration. The defendant then drove off, leaving the victim in the field. She immediately walked to the nearest house and asked the occupant to call the police.
The examining physician testified that the victim had a bleeding abrasion in her anus. In addition, the doctor observed dried blood on her right temple and left elbow. Her lip was swollen, her breasts had black and blue marks and, on the inner part of her arms, there were three-inch marks. Both of her knees were scraped and reddened.
During a proffer outside the jury's presence, the defense elicited from the victim that, in addition to her boyfriend with whom she had resided for three years, she had engaged in sexual intercourse with three men. She knew two of the men for substantial periods of time before engaging in sexual intercourse. She met the third man in a bar and had sex on their second date. The trial court ruled the foregoing evidence inadmissible because it did not constitute a pattern of similar conduct.
Section 794.022(2), Florida Statutes (1983), provides in pertinent part:
Specific instances of prior consensual sexual activity between the victim and any person other than the offender shall not be admitted into evidence in a prosecution under s. 794.011. However, ... when consent by the victim is at issue, such evidence may be admitted if it is first established to the court in a proceeding in camera that such evidence tends to establish a pattern of conduct or behavior on the part of the victim which is so similar to the conduct or behavior in the case that it is relevant to the issue of consent.
To fulfill the requirements of the statute, it must be established that the victim engaged in a pattern of conduct or behavior extremely similar to the defendant's version of the encounter. The term "pattern" denotes repetitive or frequent conduct. McElveen v. State, 415 So.2d 746 (Fla. 1st DCA 1982). One episode is not sufficient. Hodges v. State, 386 So.2d 888 (Fla. 1st DCA 1980). Moreover, the pattern must be so distinctive and so closely resemble the defendant's version of the encounter that it tends to prove that the complainant consented to the acts charged or behaved in such a manner as to lead the defendant reasonably to believe that the complainant consented. Cf. State v. Wilhite, 58 N.C. App. 654, 294 S.E.2d 396 (1982), cert. denied, 307 N.C. 129, 297 S.E.2d 403 (1982), remanded for resentencing, 308 N.C. 798, 303 S.E.2d 788 (1983). Only when these statutory requirements are met does the probative value of the evidence outweigh its prejudicial impact.
An analysis of the proffered evidence in this case shows that one incident remotely resembled the defendant's account. But, as indicated in Hodges, supra, "one episode of sexual intercourse... hardly establishes a `pattern of conduct or behavior' on the part of the victim... ." Id. at 889. Thus, we conclude that the trial court properly excluded the evidence because it was devoid of any logical tendency to prove or disprove the defense of consent.
It is important to note that Florida's rape victim shield statute does not exclude evidence that is otherwise admissible. Section 794.022(2), Florida Statutes (1983), is merely a codification of this jurisdiction's rule of relevance as it applies to the sexual behavior of a sexually battered victim. We recognize, however, that the defendant's right to full and fair cross-examination, guaranteed by the Sixth Amendment, may limit the statute's application when evidence of the victim's prior sexual conduct is relevant to show bias or motive to lie. See, e.g., Commonwealth v. Joyce, *1388 382 Mass. 222, 415 N.E.2d 181 (1981); State v. Jalo, 27 Or. App. 845, 557 P.2d 1359 (1976); see also Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). In this respect, we have carefully examined the defendant's contention that the excluded evidence was relevant to establish the victim's motive. We find, however, that his claim is without merit. Thus, we hold that the trial court properly excluded the evidence under the rape victim shield statute. Accordingly, the defendant's conviction and sentence are
AFFIRMED.
GLICKSTEIN, J., concurs specially with opinion.
WALDEN, J., dissents with opinion.
GLICKSTEIN, Judge, concurring specially:
Cynics could call this, as they could any other period of time past, the age of apathy and complacency. Others take the tentative, positive steps of shaking their heads at the evidentiary episodes of insensitivity and sighing: "Gee, that's a shame." Still others, having recognized, at the root, a "business as usual" attitude that permeates the fabric of government, the professions, commerce and social structures, keep chipping away at this huge societal slug.
Women of the third category, aware they are fully capable of competing equally with men in the exercise of intellectual and emotional leadership, have appropriately chipped away at the anachronistic apathy of males to the violation of the bodily and mental dignity of females. In the realm of dialogue over rape and sexual battery, results do not come easy. Men control the legislatures and the courts.
I quail at the harm done women by network television's sensationalized coverage of the gang rape of a woman in a bar in New Bedford, Massachusetts, and ensuing court proceedings. Before the exploitation of the victim in that case for the lascivious entertainment of New Englanders to watch, rape was unquestionably the least likely to be reported of the serious crimes. Now those that engage in rape must be gleeful in the realistic expectation that sexually battered women, heretofore hesitant to come forward and be subjected to the stress of a criminal prosecution, will for certain elect to suffer in silence after being violated.
The reaction of basically male legislators to the legitimate demands of the females who are the potential victims of rape is as varied as the water in each state. In 1974, the Florida Legislature, by 74-121, Laws of Florida, revised Chapter 794, Florida Statutes. It changed the name of the crime from rape and carnal knowledge to sexual battery, and eliminated the death penalty except for crimes against children under twelve by assailants over seventeen. It further expressed the social value judgment of Floridians' legislative representatives by codifying the admissibility, in a limited fashion, of prior sexual conduct of the victim with persons other than the accused.
The legislation has been the subject of criticism in one law review student note and has been mentioned in one comprehensive law review article. The former, Note, Florida's Sexual Battery Statute: Significant Reform But Bias Against The Victim Still Prevails, 30 University of Florida Law Review 419 (1978) suggests, with respect to that portion of the statute dealing with prior sexual activity:
While some other states are modernizing their rules of evidence concerning the prior sexual activity of the victim, Florida has failed to follow the trend of reform. Instead the Florida Legislature has produced a careless codification of some of the case law and judicial custom. Furthermore, the new statute is silent with respect to reputation evidence concerning the victim's chastity, with the result that case law must be followed.[[3]] *1389 Not only are there substantive defects in section 794.022(2) of the Florida Statutes, but flaws in form are present as well.
Id. at 435 (footnotes omitted). The latter, Man's Trial, Woman's Tribulation: Rape Cases in the Courtroom, 77 Columbia Law Review 1 (1977), by Vivian Berger, Assistant Professor of Law at Columbia Law School, reviews all of the "rape shield" statutes which had been enacted as of that time, from those of Louisiana and Michigan, which have a strict exclusionary preference, to those of Texas and New Mexico at the other end of the spectrum. She adds:
California, in a pattern followed by some other states, prohibits  with only two exceptions  the introduction of this proof in order to show that the woman consented. The Act however, cautions that nothing within the law "shall be construed to make inadmissible any evidence offered to attack the credibility of the complaining witness... ." Florida, by contrast, states a general rule of exclusion for proof of the victim's sexual conduct with third parties, but provides for admission under certain conditions when the victim's consent is placed in issue; impeachment is not referred to at all.
Id. at 35-36 (footnotes omitted).[4] Professor Berger's article concludes with a proposed model statute.
The implementation of the new Florida statute depends upon the sensitivity of the trial judge. In McElveen v. State, 415 So.2d 746 (Fla. 1st DCA 1982), our companion court affirmed the trial court's exclusion of the following proffered testimony:
The defense's proffered testimony indicated that the victim was an unchaste woman. Most of this evidence revealed that the victim had a reputation for promiscuity. Such evidence consisted of the victim's having adulterous affairs, picking up strange men at bars, and making dates with truck drivers over a C.B. radio. One witness saw the victim leave local bars with strangers. There was additional evidence relating to specific instances of sexual conduct in which one local citizen admitted having a sexual relationship with the victim a year before the alleged crime, and another testified she had seen the victim in bed with her ex-husband on two separate occasions. The trial court declined the admission of the proffered evidence, but permitted testimony revealing that co-defendant Watt, also charged with aiding and abetting the sexual battery, participated in a sexual encounter with the victim the night before the alleged crime.
Id. at 747.
Judge Larry G. Smith focused sharply on the intent of the legislature when he wrote in Hodges v. State, 386 So.2d 888, 889 (Fla. 1st DCA 1980):
Here, one episode of sexual intercourse three or four weeks before the assault hardly establishes a "pattern of conduct or behavior" on the part of the victim; and the evidence of having slept with her boyfriend on one occasion bears no relation to the issue of whether the victim consented during this hitchhiking encounter. Evidence merely disclosing prior sexual activity or looseness of morals in that regard is not admissible under the statute. In order to be admissible, the evidence must be of such a nature as to give rise to a reasonable assumption that because the victim engaged in a certain disclosed pattern of conduct or behavior, the victim probably consented to the same activity with the accused. In this respect, the test for admissibility is much like that for admission of "other crime" evidence under Williams v. State, 110 So.2d 654 (Fla. 1959), and its progeny. The proffered conduct simply fails to meet the test required by the statute.
*1390 Professor Berger's model statute would provide:
(b) The following evidence shall be admissible and may be referred to before the jury if the court finds that it is relevant to a material fact and that its probative value is not outweighed by the danger of unfair prejudice, confusion of the issues, or unwarranted invasion of the complainant's privacy or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence:
(1) Evidence of the complainant's sexual conduct with the defendant.
(2) Evidence of specific instances of sexual conduct tending to prove that a person other than the defendant committed the act or acts charged or caused the complainant's physical condition allegedly arising from these acts. Such evidence shall include proof of the origin of semen, pregnancy or disease.
(3) Evidence of a pattern of sexual conduct so distinctive and so closely resembling the defendant's version of the alleged encounter with the complainant as to tend to prove that she consented to the act or acts charged or behaved in such a manner as to lead the defendant [reasonably] to believe that she consented.
(4) Evidence of prior sexual conduct, known to the defendant at the time of the act or acts charged, tending to prove that he [reasonably] believed that the complainant was consenting to these acts.
(5) Evidence of sexual conduct tending to prove that the complainant has a motive to fabricate the charge.
(6) Evidence tending to rebut proof by the prosecution regarding the complainant's sexual conduct.
(7) Evidence of sexual conduct offered as the basis of expert psychological or psychiatric opinion that the complainant fantasized or invented the act or acts charged.
Note, supra p. 5, at 98, 99 (footnotes omitted). Whether we follow Judge Smith, or Professor Berger's suggestions, it seems to me that, in the absence of statutory explanation of "pattern," the admission of this female's isolated acts of intercourse with other men into a public trial  which would have been a media spectacle elsewhere  would have been an insensitive, unwarranted historical throwback.
WALDEN, Judge, dissenting:
Kaplan claims that the inebriated victim consented to the sexual activity. The victim claims that the sexual activity was against her will. The issue of consent was close.
The victim testified that she and her boyfriend had previously broken up on two occasions for short periods of time. During the first breakup she met a man in a bar and left with him. Two days later they engaged in sexual intercourse. During the second breakup she had sex with two men  one she had known previously for about six months, and the other for a year. This is the testimony that was excluded, I think erroneously, under the provisions of Section 794.022(2), Florida Statutes (1983).
Which shall take precedence, the mentioned statute obviously intended for the benefit of the victim, or the accused's Sixth Amendment right to confrontation and full cross-examination? I do not believe the two concerns are of equal dignity. On the one hand, the statute operates to prevent the victim from being embarrassed and, although not charged with a crime, from having her reputation put in issue. On the other hand, the Constitution gives the accused the right of full cross-examination and the right to confront his or her accusers. If the question is close and one has to suffer, I suggest that the former should give way because, if for no other reason, the accused is faced with possible conviction and incarceration. Thus, in my view, the legislative word "tends" should be given liberal application.
The statutory test, of course, is whether the sexual activity shows such a relation to the conduct involved in the case that it *1391 tends to establish a pattern of conduct or behavior on the part of the victim which is relevant to the issue of consent.
With respectful reference to the majority opinion, I take academic exception to its proviso which holds that the pattern of conduct or behavior must be "extremely similar" to the defendant's version of the encounter. I suggest that this is an impermissible engraftment or construction of a clear and unambiguous statute. Moreover, if this stringent standard of "extremely similar" is followed, it would nullify or certainly change the statutory standard that such evidence may be admitted if the evidence "tends" to establish a pattern which is "so similar" to the behavior in the case that it is "relevant" to the issue of consent. Common sense tells us that in matters of this kind there would rarely, if ever, be instances of "extremely similar" conduct. I do not and cannot construe the statute as does the majority.
Black's Law Dictionary, Revised Fourth Edition, defines "tend" as follows:
To have a leaning; serve, contribute, or conduce in some degree or way, or have a more or less direct bearing or effect; to be directed as to any end, object, or purpose; to have a tendency, conscious or unconscious, to any end, object or purpose.
In Jenny v. State, 447 So.2d 1351 (Fla. 1984), the Supreme Court of Florida reminds us (referring to F.S. 914.04) of the principles governing statutory construction:
There is no requirement that a person must invoke the privilege against self-incrimination in order to be granted immunity. Had the legislature so desired, it could have included such a provision. We will not rewrite the statute. Where a statute is unambiguous and clear upon its face, courts must accord the statute its plain meaning and are not free to construe it otherwise. Carson v. Miller, 370 So.2d 10 (Fla. 1979); Heredia v. Allstate Insurance Co., 358 So.2d 1353 (Fla. 1978).
While the testimony of the victim as to voluntary sex with three other men during the previous two short periods of breakup with her boyfriend is weak and far from conclusive, I am satisfied that it tends to show that the victim was disposed to have consensual sex with others while at odds with her boyfriend. Thus, without denigrating the salutory purpose of the statute properly applied, I feel that the jury here should have been allowed to consider the banned testimony in the interest of providing Kaplan with a constitutionally fair trial.
I would reverse and remand for a new trial.
NOTES
[1] Section 794.011(5), Fla. Stat. (1983).
[2] Section 794.022(2), Fla. Stat. (1983).
[3] Judge Ervin, who cited the student note in his opinion in McElveen v. State, 415 So.2d 746 (Fla. 1st DCA 1982), commented on this suggested flaw.
[4] A compendium of the different social value judgments one can find simply by crossing state lines is found in Annot., 94 A.L.R.3d 257 (1979). The unsuccessful constitutional attacks on various statutes are described in Annot., 1 A.L.R.4th 283 (1980). The federal version is found at Fed.R.Evid. 412. Remarks of the rule's legislative sponsors, male and female, can be reviewed in the current supplementary pamphlet to the Fed.R.Evid., 28 U.S.C.A., at 158 (West Supp. 1984).