570 So.2d 412 (1990)
Cornelius Ray LEWIS, Appellant,
v.
STATE of Florida, Appellee.
No. 89-1684.
District Court of Appeal of Florida, First District.
November 21, 1990.
*413 Laura E. Keene of Beroset & Keene, Pensacola, for appellant.
Robert A. Butterworth, Atty. Gen. and Gypsy Bailey, Asst. Atty. Gen., Tallahassee, for appellee.
JOANOS, Judge.
Appellant Cornelius Ray Lewis appeals his conviction after jury trial, and his forty year guidelines sentence for two counts of lewd and lascivious assault upon a child, and five counts of sexual activity with a child less than eighteen years of age while standing in a position of familial or custodial authority. The issues presented for review are (1) whether the trial court improperly restricted appellant's ability to establish bias, prejudice or motive through cross-examination of the victim; and (2) whether the state presented sufficient evidence to support appellant's conviction as to each count charged. We affirm.
*414 The alleged victim in this case is appellant's stepdaughter, who was fifteen years old when the charged offenses allegedly occurred. The victim's testimony at trial indicated that she began living with her natural mother and appellant in August 1986. Prior to that time, the victim lived with her natural father and stepmother. The victim testified that from August 1986 until December 1987, she got along fairly well with appellant. The victim stated, however, that in December 1987, appellant, in effect, told her that he wanted to engage in sexual activity with her. The victim further stated that when she responded negatively, appellant did not approach her again until June 29, 1988. On that date, appellant purportedly told the victim again that he wished "to mess with her," and then commenced the sexual activity alleged.
According to the victim, each of the charged offenses occurred in her bedroom, while her mother was at work. During direct examination, the victim described the specifics of the sexual activity appellant engaged in with her, beginning June 29, 1988, and continuing until October 24, 1988, when the victim reported the matter to her grandmother. According to the victim, she did not report the incidents to her mother, because she did not think her mother would believe her. Finally, on October 24, 1988, the victim called her grandmother from school and reported the incidents to her, because she realized appellant "wasn't going to stop doing it."
During cross examination, defense counsel was permitted to question the victim about her sixteen year old boyfriend. Defense counsel also elicited testimony which revealed that the victim's mother and stepfather, i.e., appellant, had discovered and read letters which the victim had written to her boyfriend. Due to the content of those letters, the victim was placed on restriction for a month, and was told that her parents did not wish her to continue to see the young man. In addition, defense counsel established that the victim's mother and appellant had told the victim that she could not have an automobile.
Additional testimony of the victim was proffered by the defense out of the presence of the jury. The proffered testimony indicated that (1) the victim first engaged in sexual intercourse with her boyfriend in May 1988; (2) her mother and appellant reprimanded her for the sexually explicit language contained in the letter to her boyfriend; (3) after appellant began engaging in sexual activity with her in June 1988, he allowed her to go out with her boyfriend whenever she wished; and (4) appellant persuaded her mother that she [the victim] should undergo a physical examination, which examination would reveal that she was sexually active. In addition, the victim's proffered testimony indicated that appellant attempted to persuade the victim's mother that the victim should be placed on an oral contraceptive. The victim stated that she was not concerned about having the physical examination, but acknowledged she had not told her mother that she was sexually active with her boyfriend, despite her mother's questions on the subject. During the trial proffer and also in her earlier deposition, the victim explained that she was able to be specific concerning the date of the first occurrence of sexual activity with appellant, because she had written a note to her boyfriend after it happened. Some months later, when the victim reported appellant's conduct to her grandmother and then to investigators, her boyfriend showed her the note she had written when the first incident occurred, thereby establishing the precise date of onset of the activity.
At the conclusion of the proffer, defense counsel argued that the testimony was relevant to the victim's motive to accuse appellant of sexual misconduct. The prosecutor argued the testimony was not relevant, because the defense had already established that the victim had a boyfriend, that her parents did not approve of her boyfriend, and that the victim had been placed on restriction because of the letter she had written to her boyfriend. The prosecutor further argued that the testimony was not offered to establish motive, but as an attack on the victim's character.
*415 The trial court's ruling on the proffered testimony is phrased in terms of its relevance. The trial court determined that the defense had been afforded adequate opportunity to establish motive or bias on the part of the complaining witness, in that the defense had shown (1) the victim's relationship with her boyfriend, (2) her family's disapproval of her activities, and (3) that the victim had been chastised for writing letters to her boyfriend. The record reflects that respective counsel debated the possible applicability of Florida's rape shield statute, see § 794.022, Fla. Stat. (1987), to prosecutions for violations of sections 794.041 and 800.04, Florida Statutes, the offenses charged in this case. In determining to exclude the proffered testimony, the trial court decided the issue on relevancy grounds, as do we, and did not rely upon the rape shield statute as such. However, we note that section 794.022(2) and (3) has been held to be an explicit statement of the rule of relevancy as it applies to the prior sexual conduct of a sexual battery victim. See Roberts v. State, 510 So.2d 885, 892 (Fla. 1987), cert. denied, 485 U.S. 943, 108 S.Ct. 1123, 99 L.Ed.2d 284 (1988); Marr v. State, 494 So.2d 1139 (Fla. 1986); Kaplan v. State, 451 So.2d 1386 (Fla. 4th DCA 1984). Therefore, our analysis of this issue necessarily takes into account cases decided under the provisions of section 794.022, the rape shield statute.
Admissibility of all evidence is governed by its relevance. Whether a fact is relevant and thus admissible, is controlled by section 90.401, which states that "[r]elevant evidence is evidence tending to prove or disprove a material fact." See Toler v. State, 457 So.2d 1115, 1117 (Fla. 1st DCA), petition for review dismissed, 461 So.2d 116 (Fla. 1984); Brown v. State, 426 So.2d 76, 78 (Fla. 1st DCA 1983); Francis v. State, 512 So.2d 280, 281 (Fla. 2d DCA 1987); Trees By and Through Trees v. K-Mart, 467 So.2d 401, 402-403 (Fla. 4th DCA 1985); review denied, 479 So.2d 119 (Fla. 1985). Otherwise relevant evidence may be inadmissible under section 90.403, "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or needless presentation of cumulative evidence." A broad discretion rests with the trial court to determine whether the probative value of evidence sought to be admitted is substantially outweighed by any of the reasons enumerated in the statute. State v. McClain, 525 So.2d 420 (Fla. 1988); Demps v. State, 395 So.2d 501, 505 (Fla.), cert. denied, 454 U.S. 933, 102 S.Ct. 430, 70 L.Ed.2d 239 (1981); Taylor v. State, 508 So.2d 1265 (Fla. 1st DCA), review denied, 518 So.2d 1278 (Fla. 1987); State v. Wright, 473 So.2d 268 (Fla. 1st DCA 1985), review denied, 484 So.2d 10 (Fla. 1986); Nelson v. State, 395 So.2d 176 (Fla. 1st DCA 1980). In other words, it is the trial court's obligation and prerogative to weigh the proffered evidence against other facts in the record, balancing it against the strength of the reason for exclusion. See Ehrhardt, Florida Evidence § 403.1 (2d Ed. 1984). Where the trial court has weighed probative value against confusion of issues, the decision to admit or exclude evidence will not be disturbed on appeal absent a showing of abuse of discretion. Jent v. State, 408 So.2d 1024 (Fla. 1981), cert. denied, 457 U.S. 1111, 102 S.Ct. 2916, 73 L.Ed.2d 1322 (1982); Mikenas v. State, 367 So.2d 606 (Fla. 1978); State v. Wright, 473 So.2d at 269; Kemp v. State, 464 So.2d 1238 (Fla. 1st DCA 1985).
A material fact at issue in this case was whether the victim was motivated to fabricate allegations that she had been sexually abused by her stepfather. The defense sought to assert that the victim accused appellant of sexually abusing her, rather than admit to her mother that she had been sexually active with her boyfriend, evidence of which would be revealed by a gynecological examination. In this vein, appellant contends the trial court's refusal to submit the proffered testimony to the jury completely foreclosed cross-examination of the state's primary witness regarding her precise motive to fabricate allegations about appellant. Appellant further asserts that the state failed to prove the essential elements of all the charged offenses, with the exception of one sexual *416 battery charged in count three of the amended information.
It is, of course, fundamental that a criminal defendant has a constitutional right to full and fair cross-examination to show a witness's possible bias or motive to be untruthful. Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); Marr v. State, 494 So.2d 1139, 1143 (Fla. 1986); Jackson v. State, 468 So.2d 346 (Fla. 1st DCA 1985); Lavette v. State, 442 So.2d 265 (Fla. 1st DCA 1983), petition for review denied, 449 So.2d 265 (Fla. 1984); Gamble v. State, 492 So.2d 1132 (Fla. 5th DCA 1986); Baeza v. State, 489 So.2d 36 (Fla. 4th DCA 1986), review denied, 496 So.2d 142 (Fla. 1986); Kaplan v. State, 451 So.2d 1386 (Fla. 4th DCA 1984). Nevertheless, public policy considerations are implicated when the cross-examination seeks to reveal a sex victim's prior sexual activity with anyone other than the accused. Exclusion of such evidence is grounded primarily on the theory that "[a] victim's prior sexual activity with one other than the accused is simply irrelevant for determining the guilt of the accused." Marr, 494 So.2d at 1142-1143. See also Roberts v. State, 510 So.2d 885, 892 (Fla. 1987), cert. denied, 485 U.S. 943, 108 S.Ct. 1123, 99 L.Ed.2d 284 (1988). Of equal importance is the prevailing view that a victim of a sexual crime should be able to testify against her assailant without having her prior sexual activities made the focus of the trial rather than the guilt or innocence of the accused. See Marr, 494 So.2d at 1142-1143.[1] Concomitantly, exclusion of such evidence keeps the jury's attention focused on the issues actually relevant to the case.
In Roberts, a case involving the rape shield statute, appellant sought admission of "specifics" concerning the victim's past sexual conduct, to refute her testimony that the rape was perpetrated by threats of physical harm to the victim and to members of her family. The court rejected Roberts' contention that it was necessary to establish the specific details of his conversation with the rape victim, in order to refute her depiction of a threatening dialogue. The court found that Roberts had been allowed to give his account of the conversation and to refute every detail of the victim's testimony. The only limit on Roberts' testimony was with regard to the victim's alleged employment, i.e., prostitution. The court further found "that the exclusion of this one otherwise irrelevant and highly prejudicial aspect of Roberts' version of the conversation in no way hindered Roberts' presentation of a complete defense." 510 So.2d at 892.
In a similar vein, in Floyd v. State, 503 So.2d 956 (Fla. 1st DCA 1987), appellant appealed his conviction for sexual battery of his daughter. Appellant contended that he had been deprived of his constitutional right to present a defense by prohibiting his examination of the victim about an incident of consensual sexual activity between the victim and her boyfriend. The victim was punished severely for this conduct on the same day she reported the sexual battery to the authorities. The trial court permitted appellant to introduce evidence that on the day the victim accused her father of sexual battery, she had been whipped by her mother, because she had her boyfriend in the house with her. The court found that admission of this evidence allowed appellant to demonstrate to the jury that the victim accused him of the crime because she was angry about the whipping. Therefore, the appellant's right to present a defense had not been abrogated by exclusion of testimony concerning the victim's prior sexual activity with a third person.
The circumstances of the instant case present a fact scenario similar to that in Floyd. In this case as in Floyd, the accused sought admission of the victim's sexual activity with her boyfriend, purportedly to demonstrate the victim's motive to fabricate sexual misconduct charges against her stepfather. Appellant was permitted to establish for the jury that the victim had a *417 boyfriend, that her mother and stepfather disapproved of the letters she had written to her boyfriend, that she had been placed on restriction due to the content of those letters, and that her mother and stepfather did not want her to see her boyfriend. In other words, the only testimony elicited on proffer that was not expressly developed during direct and cross-examination, concerned the victim's sexual activity with her boyfriend.
We conclude that in this case, as in Floyd, appellant was afforded "an adequate and fair opportunity to show the bias and motive of the victim," Marr, 494 So.2d at 1143, without focusing on the victim's sexual relationship with a third person. While we recognize that serious constitutional issues may arise should there be a complete foreclosure of cross-examination to disclose the bias of a witness, Id., we reject appellant's contention that such circumstance occurred in this case. Rather, we find that the trial court permitted a proper cross-examination of the victim, barring only those questions concerning the victim's intimate relationship with her boyfriend. Thus, we conclude the trial court's ruling in this regard struck the proper balance between protecting appellant's right to show the bias of the complaining witness, and pertinent case law holding that a sexual battery victim should be able to come forward and testify against the alleged perpetrator without having her private sexual life become the focus of the trial. See Marr, 494 So.2d at 1142-1143.
The second issue presented in this appeal concerns the sufficiency of the evidence to support appellant's conviction of each count charged in the amended information. Counts one and two of the amended information charged appellant with violations of section 800.04, Florida Statutes,[2] and counts three through seven charged violations of section 794.041, Florida Statutes.[3]
Although the victim was able to provide a specific date for only one of the incidents charged, her testimony as to the specifics of the offenses and the time period within which they occurred was precise, and was believed by the jury. No purpose would be served by a recital of the particulars of the victim's testimony concerning the specific acts charged. Suffice it to say that this testimony, which the jury found credible, was sufficient to support appellant's conviction as to each offense charged. See Kalinoski v. State, 414 So.2d 656 (Fla. 1st DCA 1982).
In summary, cross-examination regarding a victim's prior sexual activity with a third party may not be precluded if doing so would interfere with a defendant's confrontation right, or otherwise operate to deny a full and fair defense. See Roberts, 510 So.2d at 892; Marr, 494 So.2d at 1143. In this case, however, restriction of cross-examination with respect to the victim's sexual relationship with her boyfriend, did not deprive appellant of an opportunity to *418 present a defense. Appellant was permitted to show the victim's possible bias and motive to fabricate through cross-examination about letters she had written to her boyfriend, the family's disapproval of her conduct, and the restriction imposed upon her due to that conduct. Therefore, we conclude the trial court did not abuse its discretion in determining that testimony concerning the victim's sexual activity with her boyfriend was not relevant to appellant's guilt or innocence of the charges of sexual abuse. Furthermore, we find the record contains competent substantial evidence to support the jury's verdict as to each element of the charged offenses.
In addition, we certify the following question as being of great public importance:
UNDER THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND MARR V. STATE, 494 So.2d 1139 (FLA. 1986), IS AN ALLEGED VICTIM'S PRIOR SEXUAL ACTIVITY WITH A THIRD PERSON IRRELEVANT FOR DETERMINING THE GUILT OF THE ACCUSED, WHERE THE DEFENDANT SOUGHT TO DEVELOP AS A DEFENSE THEORY THAT THE VICTIM ACCUSED THE DEFENDANT IN ORDER TO PREVENT THE VICTIM'S MOTHER FROM DISCOVERING THAT THE VICTIM HAD BEEN SEXUALLY ACTIVE WITH THE THIRD PERSON?
Accordingly, the order denying motion for new trial and the order of final judgment are affirmed.
BOOTH, J., concurs.
ALLEN, J., dissents with opinion.
ALLEN, Judge, dissenting.
The prosecution of this case was founded almost exclusively upon the testimony of appellant's stepdaughter. Her credibility was the central issue presented to the jury.
The theory of the defense was that the stepdaughter had fabricated her accusations in order to conceal, and thereby preserve, the illicit sexual relationship she had been carrying on with her boyfriend. The defense strategy was to show, through cross-examination of the stepdaughter, the following:
(1) The stepdaughter began to have sexual relations with her boyfriend in May of 1988.
(2) Several months after the sexual relations with the boyfriend began, appellant and his wife discovered some letters the stepdaughter had written to her boyfriend, expressing her desire to have sexual intercourse with him.
(3) As a result of the letters, appellant and his wife expressed their displeasure, placed the stepdaughter on restriction and scheduled an appointment for the stepdaughter with a gynecologist.
(4) When her mother asked her if she had been sexually active with the boyfriend, appellant's stepdaughter did not admit that she had been.
(5) Appellant's stepdaughter was concerned that when she went to the gynecologist her mother would learn that she had been sexually active.[4]
(6) A few days prior to the appointment, the stepdaughter first made the allegations that gave rise to the prosecution below.
The stepdaughter's pretrial deposition, which is a part of the record on appeal, and the proffered testimony at trial revealed that appellant would have been able to establish all these facts through the cross-examination of the stepdaughter. There can be little doubt that such testimony would have provided a solid basis for appellant's trial counsel to have argued his theory of defense to the jury. However, rather than allow appellant to establish these facts, the totality of the cross-examination as to these matters permitted by the trial court was the following:
Q. Now, during the time that you were living with Ray Lewis and your mother, *419 things were going along pretty good until about the spring of 1988 weren't they?
A. Yes.
Q. And isn't it a fact that you started to see a young man about that particular time by the name of John Helmken?
A. I started seeing him [sic] January.
Q. January of 1988?
A. I started going with him in January.
Q. And your parents talked to you about some letters you wrote to him?
A. Yes.
Q. Didn't they?
A. Yes.
Q. And they put you on restriction and told you not to see him, didn't they, Ray Lewis and your mother?
A. They never told me not to see him.
Q. They told you they didn't want you to see him?
A. Yes.
Q. And were you placed on restriction?
A. Yes.
Q. And you weren't happy about that, were you?
A. No.
While the majority has characterized this as "an adequate and fair opportunity to show the bias and motive of the victim," I must respectfully disagree.
It is my view that by so limiting the subject cross-examination, the trial court effectively deprived appellant of the opportunity to confront his accuser and present his defense. While the cross-examination permitted provided a basis for arguing that the stepdaughter had accused appellant as retribution for being placed on restriction, that was not appellant's defense. Rather, his defense was that the stepdaughter had fabricated her accusations in order to conceal and preserve her sexual relationship with her boyfriend, i.e., by shifting blame to appellant for the information which would be revealed by the examination, the stepdaughter could avoid personal responsibility and thereby continue her sexual relationship with her boyfriend. Consequently, the effect of the trial court's limitation of cross-examination was to completely preclude appellant from presenting his defense.
If appellant's defense had been that the stepdaughter was acting in retribution for being disciplined, I would readily agree with the majority that appellant had been accorded an adequate opportunity to cross-examine on this point and develop his defense. If such had been appellant's defense, I would agree with the majority that this court's holding in Floyd v. State, 503 So.2d 956 (Fla. 1st DCA 1987), would be persuasive authority for the majority's position. However, under the facts of this case, the holding in Floyd is completely inapposite.
The Sixth Amendment, as incorporated into the Fourteenth Amendment, guarantees a defendant in a state criminal prosecution the right to a full and fair opportunity to cross-examine witnesses in order to show their bias or motive to be untruthful. Olden v. Kentucky, 488 U.S. 227, 109 S.Ct. 480, 102 L.Ed.2d 513 (1988); Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); and Smith v. Illinois, 390 U.S. 129, 88 S.Ct. 748, 19 L.Ed.2d 956 (1968).
Olden presents a factual situation closely analogous to that of the present case. Olden was a black man who was charged with raping a white woman. Excerpts from the opinion set forth the essential facts as follows:
* * * The victim of the alleged crimes, Starla Matthews, a young white woman, gave the following account at trial: She and a friend, Regina Patton, had driven to Princeton, Kentucky, to exchange Christmas gifts with Bill Russell, petitioner's half-brother. After meeting Russell at a local car wash and exchanging presents with him, Matthews and Patton stopped in J.R.'s, a "bootlegging joint" serving a predominantly black clientele, to use the restroom. Matthews consumed several glasses of beer. As the bar became more crowded, she became increasingly nervous because she and Patton were the only white people there. When Patton refused to leave, Matthews sat at a separate table, hoping to demonstrate to her friend that she *420 was upset. As time passed, however, Matthews lost track of Patton and became somewhat intoxicated. When petitioner told her that Patton had departed and had been in a car accident, she left the bar with petitioner and Harris to find out what had happened. She was driven in Harris's car to another location, where, threatening her with a knife, petitioner raped and sodomized her. Harris assisted by holding her arms. Later she was driven to a dump, where two other men joined the group. There, petitioner raped her once again. At her request, the men then dropped her off in the vicinity of Bill Russell's house.
* * * * * *
Russell, who also appeared as a State's witness, testified that on the evening in question he heard a noise outside his home and, when he went out to investigate, saw Matthews get out of Harris's car. Matthews immediately told Russell that she had just been raped by petitioner and Harris.
Petitioner and Harris asserted a defense of consent. According to their testimony, Matthews propositioned petitioner as he was about to leave the bar, and the two engaged in sexual acts behind the tavern. Afterwards, on Matthews' suggestion, Matthews, petitioner, and Harris left in Harris's car in search of cocaine. When they discovered that the seller was not at home, Matthews asked Harris to drive to a local dump so that she and petitioner could have sex once again. Harris complied. * * * [T]he men * * * then dropped Matthews off, at her request, in the vicinity of Bill Russell's home.
* * * * * *
Although Matthews and Russell were both married to and living with other people at the time of the incident, they were apparently involved in an extramarital relationship. By the time of trial the two were living together, having separated from their respective spouses. Petitioner's theory of the case was that Matthews concocted the rape story to protect her relationship with Russell, who would have grown suspicious upon seeing her disembark from Harris's car. In order to demonstrate Matthews' motive to lie, it was crucial, petitioner contended, that he be allowed to introduce evidence of Matthews' and Russell's current cohabitation. Over petitioner's vehement objections, the trial court nonetheless granted the prosecutor's motion in limine to keep all evidence of Matthews' and Russell's living arrangement from the jury. Moreover, when the defense attempted to cross-examine Matthews about her living arrangements, after she had claimed during direct examination that she was living with her mother, the trial court sustained the prosecutor's objection.

Olden, 109 S.Ct. at 481-82 (emphasis added).
Olden's conviction was affirmed by the Kentucky Court of Appeals, which held that the trial court had been correct in excluding evidence of Matthews's living arrangements. The court held that the probative value of the evidence was "outweighed by its possibility of prejudice," since the jury would have become extremely prejudiced against Matthews upon learning that she was living with Russell, a black man. Olden, 109 S.Ct. at 482. In reversing the Kentucky Court of Appeals, the Supreme Court said:
The Kentucky Court of Appeals failed to accord proper weight to petitioner's Sixth Amendment right "to be confronted with the witnesses against him." That right, incorporated in the Fourteenth Amendment and therefore available in state proceedings, Pointer v. Texas, 380 U.S. 400, 13 L Ed 2d 923, 85 S Ct 1065 (1965), includes the right to conduct reasonable cross-examination. Davis v. Alaska, 415 U.S. 308, 315-316, 39 L Ed 2d 347, 94 S Ct 1105 [1109-1110] (1974).
In Davis v. Alaska, we observed that, subject to "the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation ..., the cross-examiner has traditionally been allowed to impeach, i.e., discredit, the witness." Id., at 316, 39 L Ed 2d 347, 94 S Ct 1105 [at *421 1110]. We emphasized that "the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." Id., at 316-317, 39 L Ed 2d 347, 94 S Ct 1105 [at 1110] citing Greene v. McElroy, 360 U.S. 474, 496, 3 L Ed 2d 1377, 79 S Ct 1400 [1413] (1959). Recently, in Delaware v. Van Arsdall, 475 U.S. 673, 89 L Ed 2d 674, 106 S Ct 1431 (1986), we reaffirmed Davis, and held that "a criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby `to expose to the jury the facts from which jurors .. . could appropriately draw inferences relating to the reliability of the witness.'" 475 US, at 680, 89 L Ed 2d 674, 106 S Ct 1431 [at 1436] quoting Davis, supra, at 318, 39 L Ed 2d 347, 94 S Ct 1105 [at 1111].
In the instant case, petitioner has consistently asserted that he and Matthews engaged in consensual sexual acts and that Matthews  out of fear of jeopardizing her relationship with Russell  lied when she told Russell she had been raped and has continued to lie since. It is plain to us that "[a] reasonable jury might have received a significantly different impression of [the witness'] credibility had [defense counsel] been permitted to pursue his proposed line of cross-examination." Delaware v. Van Arsdall, supra, at 680, 89 L Ed 2d 674, 106 S Ct 1431 [at 1436].
Olden, 109 S.Ct. at 482-83 (emphasis added).
The appellant's defense in the present case was precisely the same as the defense raised by Olden, that the alleged victim had made the accusations in order to preserve a sexual relationship with a third party. The Olden court held that the defendant had a constitutional right to develop this defense through a full cross-examination of the alleged victim. I believe we are obligated to do the same here.
The majority opinion appears to conflict with a number of cases from this court recognizing the right of a criminal defendant to fully develop the motives and biases of state witnesses to testify falsely, Lavette v. State, 442 So.2d 265 (Fla. 1st DCA 1983), review denied, 449 So.2d 265 (Fla. 1984), even where the effect is to reveal sexual relations between an alleged sexual battery victim and a third party, Taylor v. State, 455 So.2d 562 (Fla. 1st DCA 1984). As we said in Lavette,
The defense should be allowed wide latitude to demonstrate bias or possible motive for a witness's testimony, Nelson v. State, 395 So.2d 176 (Fla. 1st DCA 1980); Harmon v. State, 394 So.2d 121 (Fla. 1st DCA 1980); Blair v. State, 371 So.2d 224 (Fla. 2d DCA 1979). Any evidence tending to establish that a witness is appearing for the state for any reason other than to tell the truth should not be kept from the jury. Holt v. State, 378 So.2d 106 (Fla. 5th DCA 1980).
Lavette, 442 So.2d at 268 (emphasis added).
I would vacate the judgment and sentence and remand for a new trial.
NOTES
[1] This factor takes on added significance in circumstances such as those presented in this case, where the alleged victim is a young teenager potentially subject to ongoing sexual abuse by one standing in a position of familial authority.
[2] § 800.04, Fla. Stat. (1987), provides:

Any person who:
(1) Handles, fondles or makes an assault upon any child under the age of 16 years in a lewd, lascivious, or indecent manner;
(2) Commits an act defined as sexual battery under s. 794.011(1)(h) upon any child under the age of 16 years; or
(3) Knowingly commits any lewd or lascivious act in the presence of any child under the age of 16 years
without committing the crime of sexual battery is guilty of a felony of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084. Neither the victim's lack of chastity nor the victim's consent is a defense to the crime proscribed by this section.
[3] § 794.041, Fla. Stat. (1987), provides:

(1) For the purposes of this section, the term "sexual activity" means the oral, anal, or vaginal penetration by, or union with, the sexual organ of another or the anal or vaginal penetration of another by any other object.
(2) Any person who stands in a position of familial or custodial authority to a child 12 years of age or older but less than 18 years of age and who:
(a) Solicits that child to engage in sexual activity is guilty of a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
(b) Engages in sexual activity with that child is guilty of a felony of the first degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
(3) The willingness or consent of the child is not a defense to prosecution under this section.
[4] Although the majority opinion correctly indicates that the stepdaughter's proffered trial testimony was that she was not concerned about having the physical examination, such testimony was completely contrary to testimony she gave during her pretrial deposition.